SWIFT & CO.

*v.*

PETER O'NEILL.

*Opinion filed October 19, 1900.*

1. MASTER AND SERVANT—*master's promise to repair applies to cases of defective original construction.* The rule permitting a servant to work for a reasonable time after the master's promise to remedy defects complained of, applies where the defect is in the original construction as well as where it is due to a falling out of repair.

2. SAME—*right of servant to recover though he was working in an unsafe place.* The rule which bars a servant from recovering for an injury received while working in a place known by him to be unsafe is based upon the fact of contributory negligence, and hence unless it can be said that he knew the extent of the danger he may maintain an action.

3. SAME—*rule as to servant's assuming risk of working in an unsafe place.* If the danger of working in a particular place is obvious, knowledge of that fact is attributable to the servant; but if the risk is no greater than that under which a prudent person would continue his employment under like circumstances, then the question whether such risk is assumed is properly left to the jury under all the evidence.

*Swift & Co.* v. *O'Neill,* 88 Ill. App. 162, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

187—22

AMERICUS B. MELVILLE, and F. J. CANTY, for appellant:

When a servant enters into a contract of hiring with the master he assumes all the risks incident to the employment, and is presumed to have contracted with reference to such risks. *Nealand* v. *Railroad Co.* 53 N. E. Rep. 137; Wood on Master and Servant, sec. 326; Bailey on Personal Injuries, sec. 455; *Murch* v. *Wilson's Sons & Co.* 168 Mass. 408; *Railway Co.* v. *Jackson*, 65 Fed. Rep. 48; *Railway Co.* v. *Lempe*, 59 Texas, 19; *Railway Co.* v. *Frawley*, 110 Ind. 21; *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614; *McCormick Machine Co.* v. *Burandt*, 136 id. 170; *Rolling Stock Co.* v. *Wilder*, 116 id. 100; *Pullman Car Co.* v. *Laack*, 143 id. 242; *Railway Co.* v. *Gillison*, 72 Ill. App. 222; *Pressed Brick Co.* v. *Sobkowiak*, 34 id. 312; 38 id. 537.

The rule of "assumed risks" assumes that the servant either actually knew the danger or by the exercise of ordinary care would have known of it. *McCormick Machine Co.* v. *Burandt*, 136 Ill. 170.

If the risk of the situation was open and apparent,— that is, as open and apparent to the plaintiff as to the master,—then the servant was not relieved from assuming the risk. *Agnew* v. *Supple*, 81 Ill. App. 437; *Railroad Co.* v. *Pettigrew*, 82 id. 34; *Brunt* v. *Mining Co.* 138 U. S. 483; *Toomey* v. *Eureka Iron Works*, 50 N. W. Rep. 850; *Leary* v. *Railroad Co.* 139 Mass. 580; *Cronon* v. *Orr*, 35 N. E. Rep. 648; *Bradshaw* v. *Railroad Co.* 21 S. W. Rep. 346; *Lynch* v. *Sagamore Manf. Co.* 143 Mass. 206; *Russell* v. *Tillotson*, 140 id. 201; *Kean* v. *Rolling Mill Co.* 66 Mich. 277; *Railway Co.* v. *Lempe*, 59 Texas, 19.

When the employee is one competent to act and is set at the performance of a task, the work and the manner of doing the same being left to his judgment, he cannot complain if injured by a wrong method of performing the work. *Brunt* v. *Mining Co.* 138 U. S. 483; *Cullen* v. *Borlou*, 126 N. Y. 1; *Brown* v. *McLeish*, 71 Iowa, 381; *Strable* v. *Railway Co.* 70 id. 555.

When the place is, at the time of injury, as it was originally constructed and as it was when plaintiff commenced work, then, if the condition was obvious when plaintiff made his contract to enter defendant's service and at the time he did enter such service, a request and promise to change or add to do not take the case out of the doctrine of assumed risk. It is not like a piece of machinery getting out of repair while the employee is working upon it, and a request and promise to repair that piece of machinery. *Murch* v. *Wilson's Sons & Co.* 168 Mass. 408; *Nealand* v. *Railroad Co.* 53 N. E. Rep. 137; *Fisk* v. *Railroad Co.* 158 Mass. 238.

FRANCIS T. MURPHY, and THADDEUS S. ALLEE, for appellee:

It is the duty of the master to furnish the servant a reasonably safe place to work. If he violates this duty and the servant is injured the master is liable. *National Syrup Co.* v. *Carlson,* 155 Ill. 210; *Railroad Co.* v. *Sweet,* 45 id. 197; *Railroad Co.* v. *Welch,* 52 id. 183; *Mahew* v. *Mining Co.* 76 Me. 100; *Railroad Co.* v. *Conroy,* 68 Ill. 560; *Railroad Co.* v. *Ingraham,* 77 id. 309; *Railroad Co.* v. *Scanlan,* 170 id. 106; *Illinois Steel Co.* v. *Schymanowski,* 162 id. 449.

It is for the jury to say whether the master has complied with this duty. *Weber Wagon Co.* v. *Kehl,* 139 Ill. 644.

The servant has the right to assume the master will perform the duties imposed upon him by law, and to act on such presumption, using reasonable care for his own safety. *Rolling Stock Co.* v. *Wilder,* 116 Ill. 100; *Illinois Steel Co.* v. *Schymanowski,* 162 id. 448; *Pullman Car Co.* v. *Laack,* 143 id. 242; Bishop on Non-contract Law, secs. 647, 648.

When the master promises the servant to remedy a defect, the servant may continue in the service a reasonable length of time, relying on the master to fulfill his promise, without thereby assuming the risk. *Furnace Co.* v. *Abend,* 107 Ill. 44; *Weber Wagon Co.* v. *Kehl,* 40 Ill. App. 584; 139 Ill. 644; *Swift & Co.* v. *Madden,* 165 id. 41; *Pressed*

*Brick Co.* v. *Sobkowiak*, 148 id. 578; *Illinois Steel Co.* v. *Schymanowski*, 162 id. 448; *Illinois Steel Co.* v. *Mann*, 170 id. 200; *Donley* v. *Dougherty*, 174 id. 582.

When the master, knowing the increased dangers, orders the servant to perform the work, and in doing so the servant is injured, the master is liable. *Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 448; *Offutt* v. *World's Columbian Exposition*, 175 id. 472; *Pressed Brick Co.* v. *Sobkowiak*, 148 id. 573; *Morris* v. *Pfeffer*, 77 Ill. App. 516; *National Syrup Co.* v. *Carlson*, 155 Ill. 210; *Aldridge* v. *Midland B. F. Co.* 78 Mo. 565; *Keegan* v. *Kavanagh*, 62 id. 230; *Lee* v. *Woolsey*, 109 Pa. St. 124; *Fewen* v. *Railroad Co.* 143 Mass. 197; *Kronz* v. *Railroad Co.* 123 N. Y. 1; *Lebanon* v. *McCoy*, 40 N. E. Rep. 700; *Railroad Co.* v. *Leathers*, 40 id. 1094; *Mulcaines* v. *City*, 67 Wis. 24.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellant prosecutes this appeal to reverse a judgment of the Appellate Court affirming a judgment of the superior court of Cook county against it, in favor of Peter O'Neill, appellee, for an injury to his person, the damages being assessed at $5000.

The declaration avers that plaintiff was in the employ of the defendant, Swift & Co., in an apartment of their packing plant used for smoking meats, and that he was injured by reason of the failure of the defendant to furnish suitable and proper lights in said apartment. It appears from the evidence that the building in which the accident occurred was known as the new smoke-house, in which the plaintiff had been employed from about May 15, 1897, to June 11, following, when he was hurt. He had previously worked in another part of the plant. The new building was six stories high; and was divided into small rooms, in which the meat was placed on trucks and there cured or smoked. Between these rooms, extending along the width of the building some one hundred and twenty-five feet, were narrow hall-ways, into which

the doors of the rooms opened. Along the ceiling of the hall-ways were stretched electric wires, with a socket for a globe opposite each door, but there were no globes attached. When the plaintiff and other workmen who were employed in taking the meat out of the rooms came to a door which they wished to open, a globe was attached to the wire and the light turned on. When the work was completed in that room the globe was removed and again attached opposite the new place of employment. There were windows at one end of the halls, which furnished but a partial light. Soon after the plaintiff began working in that building he complained to his foreman that the light was insufficient and that it was unsafe to work there on that account. It does not appear that the foreman made any direct promise to him in regard to furnishing additional lights, but it does appear that he told him he would refer the matter to the superintendent, and the evidence tends to show that the foreman afterwards informed plaintiff that the superintendent promised to remedy the defect, and one of the theories of plaintiff's case is, that upon the faith of that promise he continued to work until injured. At the time of the accident he was ordered by the foreman of his gang to attach the globe to the electric wire, which he attempted to do by standing upon a truck and reaching up to the wire. While in this position others employed with him in moving another truck along the hall-way ran against the one on which he was standing, knocking him off and injuring one of his legs between the foot and the knee, by scraping the skin and flesh from it, the testimony of physicians being to the effect that the injury was a very severe and painful one and probably permanent in its character.

At the close of the evidence defendant requested the court to instruct the jury to return a verdict of not guilty, which was denied.

Upon the trial of the case it was contended on behalf of defendant that the evidence failed to show such due

care on the part of the plaintiff as would entitle him to recover, even though it was shown that the defendant was guilty of the negligence alleged; also, that the latter fact was not established, and that the injury resulted from the negligence of co-employees, and therefore no recovery could be had. All these questions have been settled by the verdict of the jury and the judgment of affirmance in the Appellate Court, unless it could be said that there was no evidence tending to support plaintiff's contention on these propositions,—and this we do not think can be maintained.

The principal contention of appellant in this court, going to the merits of the case, is, that the plaintiff, under his own evidence, assumed the risk which resulted in his injury, and upon that ground the court erred in refusing to withdraw the case from the jury. It is well understood that, as between employer and employee, the latter assumes all the usual known dangers incident to the employment, and that he also takes upon himself the hazard of the use of defective tools and machinery, if, after the employment, he knows of the defect but voluntarily continues in the employment without objection; also, if a servant acquires knowledge of defects, after his employment, which increase the risk or danger, and gives notice to the master of that fact, and the latter promises to remedy the defects within a reasonable time, the servant may continue in the performance of his duties without being held to have assumed the increased risk, the reason of this rule being, that by the promise of the master a new relation is created between him and the employee, whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for a reasonable time following his promise. As before stated, the plaintiff below relied upon this principle to relieve him of the burthen of assumed risk; but the defendant now insists that there was no evidence whatever tending to prove that the defendant, through any one authorized

to make the promise, agreed to furnish additional or better lights in the places where the plaintiff was employed, and, in fact, that no definite promise was made by any one to remove the alleged defect.   Manifestly, in a case of this kind, the defendant being a corporation and acting only through agents, there must be found somewhere among its employees persons who so far represented it that notice to them, and their promise, will be binding upon the master.   And while we are not prepared to say the evidence is entirely satisfactory to that effect, yet we do think that it so far tended to prove that the superintendent occupied such a position, and that he was notified of the plaintiff's complaint and promised to furnish additional lights, as that the question was properly submitted to the jury.

It is also contended by counsel for the appellant that the foregoing rule as to notice of defects and a promise to remedy them does not apply to cases where the original construction is defective, but only where the place, machinery, appliance, etc., becomes less safe and secure than originally constructed.   We are unable to see any rational ground for this distinction, although cases are cited which seem to recognize it.   The justification of the servant continuing in the employment after discovering the defects, as above stated, rests upon the promise of the master to remove that defect; and, whether it arises from the original construction or imperfections resulting from the use, if he sees proper, upon the complaint of his employees, to promise to remove the danger, we see no reason why he should not be bound by that promise in the one case as well as in the other.

We do not think, however, that it is necessary to place the plaintiff's case entirely upon the alleged promise to furnish additional lights in the building.   While it is true, as stated, that where an employee becomes informed of defects in the place in which or the appliance with which he is required to work, and continues in that em-

ployment without any promise to correct the defects, he must be held to assume the risk, that rule is subject to well-defined qualifications. The question whether a servant is barred of a right of recovery for injuries incurred by working in an unsafe place or using appliances known by him to be defective, on the ground of assumed risk, is, in fact, based upon the rule that one cannot recover for an injury to the incurring of which he has contributed by his own negligence. Hence, although he may know of the defects, yet unless, under all the facts and circumstances of the case, it can be said he knew of the extent of the danger, he may still maintain his action. That is to say, an employee may know of defects in such place or appliance and yet be justifiable in the belief that by the exercise of proper care no immediate danger from such defects will be incurred, and therefore his right of recovery not be defeated. "The true rule, as nearly as it can be stated, is, that a servant can recover for an injury suffered from defects due to the master's fault, of which he had notice, if, under all the circumstances, a servant of ordinary prudence, acting with such prudence, would under similar conditions have continued the same work under the same risk; but not otherwise. All the circumstances must be taken into account, and not merely the isolated fact of risk." (1 Shearman & Redfield on Negligence, sec. 211.) "Where the instrumentality with which a servant is required to perform service is so glaringly defective that a man of common prudence would not use it, the master cannot be held responsible for damages resulting from its use. But if a servant incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonable to suppose it may be safely used with great skill or care, mere knowledge of the defects on the servant's part will not defeat a recovery. Negligence on the part of the servant, in such cases, does not necessarily arise from his knowledge of the defect, but is a question of fact to

be determined from such knowledge and the other circumstances in evidence." (5 Rapalje & Mack's Digest of Railway Law, sec. 352, *et seq.* p. 208. See *Huhn* v. *Missouri Pacific Railway Co.* 92 Mo. 440, and authorities there cited.) It is also said in note 1 to section 211 of Shearman & Redfield, *supra:* "It is generally a question for the jury whether the surrounding circumstances made it contributory negligence for the servant to continue using the appliances,"—citing authorities.

When it is said that an employee assumes all the *usual known dangers* incident to his employment, and that he must have knowledge of the unsafe and defective character of appliances, or that it must be shown that he has knowledge of the fact that defects render the appliances dangerous, the term "knowledge," as used in defining assumed risks, means no more than that all the facts and circumstances surrounding the given case must be sufficient to charge the employee with the required information. If the danger is obvious, knowledge of that fact will, of course, be attributable to the employee; but if, as already said, the risk is no more than that under which a prudent person would, under like circumstances, continue his employment, then certainly he cannot, as a matter of law, be held to assume the risk. And so in this case, it was a question proper to be left to the jury, under all the evidence, whether the risk was assumed or not.

Contrary to our rule the appellant has filed in this court the statement of case, brief and argument filed in the Appellate Court, containing the discussion of questions not open to review here. We have, however, given attention to such assignments of error of law as are properly made here, and find no substantial reasons for dissenting from the views announced by the Appellate Court in its opinion. We think its judgment is in conformity with the law and facts of the case, and it will accordingly be affirmed.          *Judgment affirmed.*