C., I. & L. Ry. Co. v. Barr.

107 111
r204s 163

## Chicago, Indianapolis & Louisville Ry. Co. v. Herbert S. Barr.

1. MASTER AND SERVANT—*Duty to Furnish Safe Appliances.*—Machinery, cars and engines ought not to be so constructed that the slightest indiscretion on the part of the operatives will result in injury. They should be constructed in a reasonably safe way to enable the servants to perform their necessary work with reasonable safety.

2. SAME—*Servant Not Liable Unless He Knew that Defect Rendered the Appliance Dangerous.*—To charge a servant with negligence in using a machine known by him to be defective, it must be shown that he knew that the defect rendered the use of the machine or appliance dangerous.

3. NEGLIGENCE—*A Question of Fact.*—Negligence is a question of fact to be determined from all the evidence in the case.

Trespass on the Case.—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Mr. Presiding Justice BALL dissenting. Opinion filed February 26, 1903. Rehearing denied April 23, 1903.

This is an action brought by appellee as administrator of the estate of Charles M. Campbell, deceased, against appellant, to recover damages for the death of said Campbell while he was in its employ.

The deceased was a switchman by occupation, thirty-eight years of age, and in good health at the time he received the injuries which caused his death. He had been working for appellant as a switchman for more than a year before July 13, 1897. On that day at six o'clock A. M., he reported for duty at Hammond, Indiana. He and one Stowman worked with and around a switch engine, which deceased had never seen before, from six o'clock in the morning until about 4:30 P. M., when the accident happened. Stowman worked ahead of the engine and deceased behind it. Each was engaged in making couplings, lining switches, etc., in the railway yard. The engine had a footboard at the rear of the tender about a foot in width and extending clear across the back of the tender. Upon the rear of the tender about three feet above the footboard there were two hand-holds

or grab-irons. These hand-holds were each about eighteen inches long, and were fastened on each side of the rear of the tender, and extended to within two inches of each side thereof. They ran cross-wise with the tender, the same as the footboard. They were used by switchmen to hold onto while riding on the footboard. There also was a draw-bar on the rear of this tender. The distance from the foot-board to the top of the tank was about six feet. It was impossible to hold onto one of these grab-irons and reach the top of the tender at the same time. There was no lad-der running from the footboard to the top of the tender. There was a box on top of and about three feet from the rear of the tender, where the switchmen kept their lan-terns, etc.

Between four and five o'clock on the day of the accident the engine was backing north on what is known as No. 2 track, to pick up some cars. It was broad daylight. The deceased was about eight car lengths down this track. The engine made almost a stop to pick him up, and he got on the west side of this footboard. He held a flag in his hand, the flag-stick of which was about thirty-six inches long. This flag was used by the switchmen when on the ground on the main line. When they got in the Hammond yards they had no use for the flag. He asked Stowman, a fellow switchman, who was also on the footboard, " Where do you put this flag?" Stowman answered, " I put the damned thing up there, any old place; I always put it up there in that box." To the place where they were going was about thirty car lengths. Deceased gave a signal to the engineer to start, and the engineer backed on north. After the engine started deceased turned around facing the tank. He then took hold of one of the grab-irons, put his foot upon one of the irons of the draw-bar, and tried to get hold of the top of the tender, with the obvious inten-tion of placing the flag in the tool-box. The next seen of him was on the track, the engine backing toward him. He took three or four steps in an effort to escape, when he was struck by the footboard and one of the drive wheels passed over his body, killing him. Whether he fell off the

engine or voluntarily stepped off, is not clear from the evidence. The conclusion of counsel for appellee as to the manner of the accident is this: " In endeavoring to spring to the top of the tender he either slipped, did not spring high enough, or did not succeed in getting a secure hold of the top of the tender, and as a result he lost his balance and fell," etc.

These facts, more in detail than we have given them, with jurisdictional matters, and the statute of Indiana relating to "Action for causing the death of another," (Sec. 284, R. S. of the State of Indiana), were put in evidence by appellee, and then he rested. Thereupon appellant moved the court to instruct the jury to find the defendant not guilty. This motion the court overruled, to which ruling appellant then and there excepted.

Appellant, by its counsel, then declined to introduce any evidence, and tendered to the court a written instruction, and requested the court to give the same to the jury. It read: " That under the evidence in this case the plaintiff is not entitled to recover, and your verdict should be for the defendant." But the court refused to give the same to the jury, to which ruling appellant then and there excepted.

Thereupon both appellee and appellant presented written instructions and asked the court to give them to the jury. Some of the instructions then tendered by appellant the court refused to give to the jury, to which ruling exceptions were then and there duly taken.

The jury, by their verdict, found appellant guilty and assessed plaintiff's damages at $5,000. From the judgment entered upon that verdict this appeal was perfected

G. W. KRETZINGER and L. L. SMITH, attorneys for appellant.

JAMES C. McSHANE, attorney for appellee.

OPINION PER CURIAM.

The sole question in this case is this: Under the evi-

dence, was the trial court justified in the refusal to take the case from the jury?

Appellee contends, it appears from the evidence that in the doing of their work the switchmen were at times compelled to climb from the rear footboard over the tender while the engine was in motion, either to communicate with the engineer or to get a flag or a lantern from out the tool-box, and that the absence of a ladder, or steps, or of additional grab-irons, made this duty dangerous, and therefore this tender was not constructed in a reasonably safe way to enable the switchmen to perform their necessary work with reasonable safety. Chicago & G. W. Ry. Co. v. Armstrong, 62 Ill. App. 228. Machinery, cars and engines ought not to be so constructed that the slightest indiscretion on the part of the operatives will result in injury. Toledo, W. & W. Ry. Co. v. Fredericks, 71 Ill. 296. "It was the duty of the defendant to furnish a locomotive suitable for the work which it required plaintiff to do." Lawless v. Conn. River R. R. Co., 136 Mass. 1. The jury, by their verdict, have found that this engine, in its then condition, and in view of the work the switchmen were required to perform while on duty with it, was not in a reasonably safe condition at the time of the accident. We think there is enough evidence in the record tending to show negligence of appellant in the use of this engine and tender, as thus equipped, to send the case to the jury upon that point.

It is not disputed that the deceased had never worked with this engine until the day he was killed. It appears that Stowman, his fellow-switchman, followed the engine and made all the cuts, while the deceased kept the cars coupled together, lined up the switches and protected the rear of the train. In other words, Stowman's duties kept him with and around the engine, while those of the deceased kept him with and around the cars. There is no evidence that the deceased during that day had ridden upon this footboard until a few minutes preceding his death, or that he knew the tender was not equipped with a ladder or some

equivalent appliance, until after he had stepped upon the footboard, given the signal to back up, had been informed by Stowman where the flag was kept, and had turned around to go upon the tender. Upon the spur of the moment, although he must have seen the absence of suitable and sufficient appliances to enable him to reach the top of the tender without danger of injury or death, he may not have had such a complete knowledge and appreciation of the nature and extent of the danger he incurred in attempting to put the flag in the tool-box as to charge him with assuming the risk as a matter of law. In the absence of evidence that he had such knowledge, it will not be presumed, as no one is presumed knowingly to incur physical pain and death when he can avoid it at his discretion. Chicago & E. I. R. R. Co. v. Knapp, 176 Ill. 127. Negligence is not necessarily to be imputed to the deceased merely because he knew of the defect; but it is a question of fact to be determined from all the evidence in the case. Swift & Co. v. O'Neill, 187 Ill. 337; City of LaSalle v. Kostka, 190 Ill. 130. In our opinion, the question of negligence of the deceased, and whether he assumed the risk, were properly submitted to the jury.

The instructions given the jury state the theory of appellant fully, and are as favorable to it as the law and the facts of the case warranted.

Finding no reversible error, the judgment of the Superior Court is affirmed.

Mr. Presiding Justice BALL dissenting.

Deceased, in the prime of life, was instantly killed by the engine with which he was working. He left a widow and six children. These facts excite sympathy. I would gladly unite in an affirmance, did I not think the principles of law governing this case forbid.

He was an experienced switchman. It is true, he had not worked with that engine until the morning of the day upon which he met his death. It is also true the record does not disclose that he had stood upon that footboard at

any time except just prior to the accident. But he had been working at the rear of this engine for nine hours preceding his death. When he took his place on the footboard to ride some thirty car lengths, he had a small signal-flag in his hand. The engine came almost to a stop when it took him on. Under the custom which governed running to the rear, it was the duty of the engineer in charge of the switching engine to await the signal of deceased before he started the engine. If deceased thought it necessary to put the flag in the tool-box, he could have done it before he gave that signal. Instead of so doing, he gave the signal to start, and then asked his fellow switchman where to put the flag. The answer was, in substance, any place; in the tool-box. He turned his face to the rear elevation of the tender. From the footboard it presented a perpendicular height of about six feet, which he must scale in order to reach the level of the tool-box. A glance told him everything that he would have known after a thousand inspections, i. e., that there was no ladder and were no steps, and that there were only the grab-irons and the projecting draw-bar, all on a line with the bottom of the tank, between him and the flaring top of the tank. He also saw that in order to reach that flaring top, he must quit his grasp on the grab-irons and spring from a footing upon some part of the draw-bar. Notwithstanding the obvious danger in which he would place himself by then endeavoring to put the flag in the box, he made the attempt. In some way (just how is not shown) he failed to reach the top of the tender and fell or jumped to his death. He was not then acting in obedience to any order. He was the master of the situation. Had he given the signal to stop, in order that he might dispose of the flag, the engineer under the custom would have obeyed him. The deceased was then in transit to the place where standing cars were to be handled. No necessity is shown for the then placing the flag in the tool-box, nor does it appear that he would have been seriously inconvenienced by retaining the flag until those cars were reached. The servant assumes not only the

ordinary risks incident to his employment, but also all dangers which are obvious and are known to him. One has no right knowingly to expose himself to danger and then recover damages for an injury he might have avoided by the use of due care. Beidler v. Branshaw, 200 Ill. 425. I can not avoid the conclusion that, seeing the patent dangers which confronted him, without being urged by orders, duty or necessity, he knowingly attempted to climb the rear of this tender while the engine was in motion; that in so doing he neglected to use reasonable care for his personal safety; and that such neglect bars a recovery in this case. To hold otherwise places all the risks of the employment upon the master, and makes it the insurer of the safety of its employes.