## Henrietta Coal Company v. William Campbell.

1. SPECIAL INTERROGATORY—*when, will not control general verdict.* Where a special interrogatory as to whether the plaintiff had actual knowledge of a certain defect has been submitted to the jury and been answered in the affirmative, such special interrogatory will not control the general verdict where it does not appear from the form of such interrogatory and the answer thereto that plaintiff had such knowledge prior to the injury to him.

2. ASSUMED RISK—*what is not.* A risk, though known to the servant, is not deemed in law to have been assumed unless the danger arising from such risk is, likewise, known by him.

3. CONDUCT OF COUNSEL—*when, not ground for reversal.* The conduct of counsel in making an offer of proof which has already been rejected by the rulings of the court is not in itself ground for new trial. (See reporters' note at conclusion of opinion.)

Henrietta Coal Co. v. Campbell.

Action on the case for personal injuries. Appeal from the Circuit Court of Madison County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1903. Affirmed. Opinion filed March 10, 1904.

TERRY & WILLIAMSON, for appellant.

BURTON & WHEELER, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This suit was brought by the plaintiff, appellee, against the defendant, appellant, to recover damages for injuries received while in the employ of the defendant. Defendant owned and operated a coal mine in which plaintiff was employed and at the time of the injury was engaged as a driver. The coal was moved from the working rooms or face of the mine to the pit or shaft, a distance of several hundred feet, by means of cars drawn by a mule, over a tramway of usual construction, through what is termed an entry. At one point in going out, the road first turns to the right, through a cross-cut, to a parallel entry, into which it leads by a second turn which is to the left. In the cross-cut and near the second turn mentioned, quantities of slate, rock, and refuse, constituting "gob," so accumulated as to partially fill the space between the track and the rib on the right, causing a sharp incline in the surface from the rail toward the rib on that side. In clearing the tracks of dirt or gob prior to the injury a rock or clod two and one-half or three feet square had been leaned and left against the pile of gob just outside the rail. There is evidence that there was scant space between the rock and the rib on the opposite side, and that in passing, the cars would at times touch or rub against the rib on one side or the axle against this rock on the other. The mule driven by plaintiff had a bad reputation "even for a mule." He was a kicker. He was expert in his line. The "drop of the hat" or other slight provocation was quite sufficient to excite his natural or acquired propensity to a strenuous movement of his heels, in protest, it may be, of the service required, or in amusement to relieve the monotony of toil. December 11, 1901, on his

way through the entry to the shaft, plaintiff was driving this mule attached to a loaded car by a chain four or five feet in length, and when he came to the second turn in the entry, at the point where the rock lay, he was walking on the track between the car and the mule, with his hand on the chain. He stooped to remove a clod or piece of rock from the rail in advance of the car, the mule kicked at him, and to get out of reach the plaintiff jumped to the side of the track on the gob, on this rock. His foot slipping down, his leg was caught between the car and the rock and was broken.

The declaration contains three counts. The first charges defendant with negligence in permitting a large amount of "gob" to be and remain for a course of time too close to the track along which the plaintiff was required to pass in the exercise of his duties. The second count is practically the same as the first except that the negligence charged is that defendant "suffered a large rock or piece of slate to be and remain very close to said track." The charge of negligence in the third count is, that the defendant knowingly and negligently provided plaintiff with a dangerous, unsafe and vicious mule, and that he received his injury while endeavoring to escape from the same.

A trial by jury resulted in a general verdict for plaintiff for $2,640. The jury answered to special interrogatories submitted, as follows: "1. Did the plaintiff know that at this curve, where he was injured, the gob and stone were so close to the track that the car touched it as it passed? Answer: Yes. 2. Did plaintiff, knowing that this mule kicked, of his own will continue to drive him in this entry? Answer: No. 3. Did the plaintiff know that this mule usually kicked at the place where plaintiff was hurt, and that he might kick him, and with this knowledge, did he continue voluntarily to work for defendant? Answer: No."

Defendant moved the court to render judgment for defendant, notwithstanding the general verdict. This motion was denied, as was also the motion for a new trial. Plaintiff entered a remittitur of $640, whereupon the court

gave judgment for plaintiff for $2,000, and defendant appealed.

The finding under the first interrogatory is not inconsistent with the general verdict.    In form and answer the question is not conclusive.    To avail the purpose of the interrogatory and hold the plaintiff to a knowledge of the defect, he must have known it not only at the time of the injury, but prior thereto.    Assuming, however, that the answer given by the jury was intended to support defendant's contention on the trial, that plaintiff knew of this rock and its proximity to the track, it is not sufficient to bar the plaintiff or justify a judgment for defendant on motion. In addition to knowledge of the defect or obstruction there must be knowledge of the danger incurred thereby.    The special finding is wholly insufficient in this respect.    It yet remained for the jury to determine from the evidence whether the plaintiff knew the obstruction complained of and knew the danger to which he was exposed by reason of it.    The plaintiff may be held to have assumed the risks incident to the employment.    In addition to that he may be held to assume the risk of a known obstruction by which he is injured, provided, as a reasonable and prudent man, he may be held to a prior knowledge of the danger of such obstruction.    The doctrine of assumed risk by an employee arises out of contract and is presumed from his acceptance of employment.    Hazard from defective machinery, appliances and facilities, though not ordinary and incidental, may nevertheless come within the rule if known to the employee, and he afterward voluntarily continues in the employment.    As we had occasion to say in the case of I. T. R. R. Co. v. Thompson, opinion filed this term (112 Ill. App. 463): "To bar the action on the ground of assumed risk it must appear that the injury was incidental to the business and not by reason of defendant's negligence.    Nor does the doctrine of assumed risk involve the question of ordinary care or contributory negligence.    The inquiry is not as to the conduct of the parties, employer and employee, one toward the other, but as to the relationship between

them whereby the master is relieved of liability." Further-more, applying the language of that case to the one at bar, "it may not be contended that the danger from this ob-struction was incidental to the business and a risk assumed by the plaintiff, unless it is shown by the evidence, that the plaintiff knew and understood the danger to which he was exposed."

Under the third count of the declaration the disposition of the mule may be considered under the rule relating to de-fective appliances. It is charged that the animal, by reason of his vicious and dangerous propensities, was not adapted to the purpose for which he was supplied. The doctrine of assumed risk is likewise invoked by appellant in the con-tention that the plaintiff was fully acquainted with all that is now complained of in this "appliance," and thereby he must be held to have assumed the risk in driving him. Whatever danger or hazard might have been anticipated by a reasonably prudent and cautious man with the knowl-edge possessed by the plaintiff, would be within the rule, and to that extent the defendant would be relieved of lia-bility. It is clearly proven that plaintiff knew the vicious character and disposition of the mule and more than once protested against its use, and yet, under the insistent per-suasion of the manager, continued voluntarily in the service. If he had been kicked by the mule or otherwise injured in a manner reasonably to have been anticipated in the use of the animal, it might well be urged that there was no liability under the third count, because of risk as-sumed. Whether his knowledge would cover the danger shown by evidence in this case was a question for the jury, as was, also, the question of defendant's liability under the rule requiring only reasonable care in the master for the safety of the servants.

"When it is said that the employee assumed all the *usual known dangers* incident to his employment, and that he must have knowledge of the unsafe and defective character of appliances, or that it must be shown that he has knowledge of the fact that defects render the appli-

ances dangerous, the term 'knowledge,' as used in defining assumed risks, means no more than that all the facts and circumstances surrounding the given case be sufficient to charge the employee with the required information. If the danger is obvious, knowledge of that fact will, of course, be attributable to the employee; but if  *  * . *  the risk is no more than that under which a prudent person would, under like circumstances, continue his employment, then certainly he cannot, as a matter of law, be held to assume the risk." Swift & Co. v. O'Neil, 187 Ill. 337. In this case, as held under the facts in the case just cited, the question of assumed risk was one properly to be left to the jury.

Whether the plaintiff exercised ordinary care for his own safety before and at the time of the injury, under evidence in this record, was, likewise, a question for the jury. The evidence tends to prove the declaration and it would have been error to give the peremptory instruction asked by the defendant. Nor can we say, after a careful examination of the record, that the verdict is so manifestly against the weight of evidence, upon any material fact necessary to be proved, that it ought to be set aside and a new trial granted.

Complaint is made of the rulings of the court in admitting evidence of conversations between plaintiff and the witness Grabruck, the manager, relative to the use of the mule. It is true the declaration does not count upon negligence in giving an improper order, or for injuries caused by obedience to such order, as in Ill. Steel Co. v. Schymonowski, 162 Ill. 447, and other cases. Nevertheless the evidence was competent and properly admitted as affecting the questions of assumed risk and contributory negligence, both of which were involved by the issues and earnestly contested. The purpose or theory of counsel in presenting the testimony, or in argument before the jury, however fallacious, will not exclude evidence that is competent and material under the issues. The improper conduct of plaintiff's counsel by an offer before the jury to make proof of a matter already excluded by the court's ruling, justifies complaint, and if done with a purpose to influence or excite

prejudice in the minds of the jury, is deserving of severe rebuke, which we hope was administered by the court, though that does not appear in the record. Without other substantial error affecting the merits of the trial, we may not regard this as sufficiently prejudicial to discredit the verdict.

Under the evidence, the amount of damages allowed will not warrant the court in reversing the judgment.

In accordance with the views herein expressed, the judgment of the Circuit Court will be affirmed.

*Affirmed.*

REPORTERS' NOTE. In connection with the decision of the court as shown by this portion of the syllabus, we would refer to the case of Pioneer Reserve Ass'n v. Jones, 111 Ill. App. 156.