### Edward Stumpf, Appellee, v. Corn Products Manufacturing Company, Appellant.

1. MASTER AND SERVANT—*when former not liable.* A master is not liable for an accidental mis-step by his servant.

2. MASTER AND SERVANT—*when doctrine of assumed risk applies.* If a servant knowing of the conditions which resulted in his injury, continued at his work for a considerable period without complaint, the doctrine of assumed risk applies and bars a recovery.

Action in case for personal injuries. Appeal from the Circuit Court of Tazewell county; the Hon. T. N. GREEN, Judge, presiding. Heard in this court at the May term, 1909. Reversed. Opinion filed March 30, 1910.

JOHN A. BLOOMINGSTON, STEVENS & HORTON and J. M. ELLIOTT, for appellant.

C. L. CONDER, RALPH DEMPSEY and W. R. CURRAN, for appellee.

Mr. Justice Philbrick delivered the opinion of the court.

This is an action by appellee to recover for injury received while working for appellant. The negligence charged in the declaration is a failure to provide appellee with a reasonably safe place in which to work. Judgment below was for $1,500.

The declaration consists of three counts and they are substantially alike. Appellant was engaged in the operation of a factory for the manufacture of glucose and other corn products at Pekin, Illinois. Appellee had been employed by appellant for some time in various capacities around the factory. His employment at the time he was injured was that of an oiler and his duty was to see that the machinery was kept properly oiled.

The portion of the machinery at which appellee was injured consisted of a jack shaft upon which a number of pulleys were running and this shaft was operated from an electric motor by means of a belt, the shaft connecting by belts with mills in the factory for grinding corn.

The base of the jack shaft in question was two timbers 10x10 inches, bolted on the floor. They were placed about eighteen inches apart. On these timbers were mortised and bolted cross timbers, upon which the shaft rested and revolved in boxes there constructed. The base for this jack shaft was placed by the side of a platform or landing of a stairway, coming from the floor above. This platform or landing of the stairway was four feet above the floor and it rested at one end on 4x4 timbers, one at each corner. It extended the full length of and parallel to the jack shaft and the other end was fastened to the wall of the building. The timber upon which the jack shaft rested and nearest the platform was ten and one-half inches from the post supporting the platform. There were braces or bars upon the under side of this platform.

In order to reach the parts of this jack shaft which required to be oiled, appellee was required to go upon the 10x10 inch timber, which was one of the base timbers of the jack shaft and near the platform. This was the only means of access.

The contention of appellant being the injury received was one of the risks assumed by appellee in his employment; that there was sufficient light at this point so the shaft might easily be seen and appellee knew there were no guards; that whatever danger existed, by reason of the condition of affairs at this point, was such as could be seen by appellee at all times; that he had been in the employ of appellant as oiler for something over six days and had oiled this same machinery a great number of times every day during that time and that by continuing to do this work, in the condition in which it was, he assumed all risk of an injury occasioned thereby.

The record in this case discloses without question that appellee performed his duties as oiler upon this jack shaft for six consecutive days, and having become familiar and acquainted with the surroundings, the location of the platform and jack shaft and the means it was necessary to take or adopt in order to reach the portions of this jack shaft which required oiling, he continued in this employment for this length of time and all of the defects, if any existed, being patent and readily discernible to an ordinary person, using his usual faculties for avoiding the injury to himself, he continued in the employment and reached this machinery by going on this 10x10 inch timber, the only manner in which it could be reached, on all occasions when he was required to oil same.

The pulleys upon this shaft, at least one of them, was so large that it occupied the entire space of the base of the jack shaft and at the point where it revolved, and these 10x10 inch timbers were trimmed at the edges to permit it to revolve between them. It was while attempting to oil the parts of this jack shaft

that appellee in passing along and upon this 10x10 inch timber and while attempting to pass the large pulley upon this shaft, that his foot slipped, he fell and was caught in this pulley which was revolving at from five to seven hundred revolutions per minute. His injury consisted of a dislocated hip, dislocated knee, sprained or broken ankle and numerous pieces of bone were required to be removed from his limb. The jacket shaft and pulley were not guarded in any way and there were no cups upon the parts to be oiled.

The jack shaft was in such a position that there was sufficient light for appellee to see any danger that existed, by reason of its construction, either in the manner of construction or the proximity to the platform where it was placed. It was not necessary to have guards placed over these pulleys for the purpose of informing anybody that they were dangerous. It was apparent to any ordinary person that a pulley, revolving at the rate of from five to seven hundred revolutions per minute, was a dangerous piece of machinery to come in contact with and the ordinary instinct of self-preservation would compel a person to keep away from it.

The cause of this injury as shown by appellee in his own testimony was that he slipped from this 10x10 inch timber and fell upon the revolving pulley.

An employer cannot be held responsible for an accidental mis-step of a servant. If the timber at the point where he slipped had become oily or slippery, it was his duty to do the oiling of this machinery and pass over it a great many times each day, and if the beam became slippery by reason of oil, it was a fact which was more easily, more readily discernible to him and one which he had greater opportunity to know and ascertain than the employer.

The facts as herein set forth are virtually undisputed in this record. Appellee knew of all these conditions, continued to work and without any complaint whatever, and under the rule as laid down by the Su-

preme Court of this state in the cases of Montgomery Coal Co. v. Barringer, 218 Ill. 329, Karr Supply Co. v. Kroenig, 167 Ill. 560, Howe v. Medaris, 183 Ill. 288, and by the Appellate Court of the First District in Steffen v. Illinois Steel Co., 140 Ill. App. 551, which follows the rule laid down in the above cases, appellee assumed the risk, and the injury occasioned as shown by the facts in this case was one of the risks assumed by his employment and there can be no recovery in this action.

Upon the view taken by the court of this case that the risk was one assumed by the appellee and there can be no recovery, it is unnecessary for the court to pass upon the other questions raised upon this record.

The finding of this court being contrary to the verdict of the jury, the clerk will incorporate in the judgment the finding that the injury was one of the ordinary risks assumed by appellee in his employment and the judgment will be reversed without remanding.

*Reversed.*