Gerald Stahl, Appellant, v. Daniel Dow and Matt Skinner, Appellees.

Gen. No. 10,137.

Opinion filed September 26, 1947.  Released for publication October 20, 1947.

EDWARD S. FOLTZ, JR. and JOHN H. PAGE, both of Rockford, for appellant.

RYAN & HOOD, of Rockford, for certain appellee.

MAYNARD & MAYNARD, of Rockford, for certain other appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Gerald Stahl brought this suit against appellees, Daniel Dow and Matt Skinner to recover damages for injuries he sustained as a result of his right foot slipping and coming in contact with a revolving rod or shaft operating a corn elevator. At the close of the evidence on behalf of the plaintiff, the jury, in obedience to the instructions of the trial court returned verdicts of not guilty in favor of both defendants. From judgments on these verdicts plaintiff appeals.

The evidence discloses that in September 1941, the plaintiff was employed by the defendant, Daniel Dow by the month as a general farm hand and continued in his employ until the latter part of April 1942. At that time he returned to his father's home on the farm and worked there until November 18, 1942, when he again went to work for Mr. Dow, receiving $3 per day and his board and room for his services. At the time he was 19½ years of age, had graduated from grade school and attended high school for a year and a half and was well acquainted with farm machinery of different kinds and knew how to operate such ma-

chinery. He had cut hay, operated an oats binder, a gas motor and had assisted in silo filling where the corn was cut into silage and an elevator used to elevate it into the silo. He testified that he did a man's work and received for so doing customary wages.

On November the 18th and 19th, 1942, corn was being picked with a mechanical picker on the farm of appellee, Daniel Dow, and hauled to the crib where a corn elevator was used to elevate it into the crib. Appellant was engaged there in scooping the corn back in the crib. In the middle of the afternoon of the 19th the crib was filled and appellant assisted in taking the elevator down and it was moved from the Dow farm to the farm of appellee, Matt Skinner, and appellant assisted to some extent in setting it up there. The following morning appellant at the direction of Dow took Dow's team and wagon and went to the Skinner farm where his brother, who was employed by Dow, was using a mechanical corn picker. Appellant hauled either six or seven loads of corn from the fields on the Skinner farm to the crib on that farm and unloaded his wagon elevating the corn from it into the crib by means of the mechanical corn elevator. The equipment so used for elevating the corn from the wagon into the cribs on both the Dow and Skinner farms belonged to Skinner and consisted of the usual Montgomery Ward commercial elevator and an Allis-Chalmers farm tractor, together with a home constructed speed jack and pulley and drive shaft. A belt fitted over the pulley on the tractor and when this pulley turned the shaft revolved and power was thus transmitted to the elevator. Chains were attached to the front wheels of the wagon and were used to hoist the front wheels of the wagon. This hoist received its power from the tractor and was controlled by a lever. The drive shaft was approximately four and one half feet long and ten and one half inches in circumference. There was a hopper on

the elevator and when a load of corn was brought from the field the wagon was backed into position so that the end gate was slightly above the hopper. In order to start the elevator the tractor was started by turning on the ignition and pushing the starter button. When the tractor was operating the wagon was hoisted by pulling down a lever.

On November 19 the plaintiff hauled some of Dow's surplus corn over to Skinner's crib where the same elevator equipment was in use and when picking commenced on the Skinner farm on the morning of November 20, Mr. Dow was at the crib of Mr. Skinner and showed appellant how to turn on the tractor, where to hook the chains on the front wheels and how to hoist the wagon and explained to him everything about the operation of the corn elevator and told him to be careful in the event he stepped across the revolving shaft in order to reach the hoisting lever. The plaintiff hauled in from the fields, unloaded and elevated into the Skinner crib either six or seven loads of corn and had completed unloading his last load about three o'clock in the afternoon.

About the time appellant had finished unloading his last load, Mr. Two, who was also hauling in corn from the picker drove up and backed his wagon into position for unloading. It was misting in the morning and at noon it was raining a little and continued through the afternoon so that the ground was muddy and slippery. The plaintiff testified that after Mr. Two had his wagon in position for unloading that he, the plaintiff, helped Mr. Two attach the chains to the front wheels and then he, the plaintiff, reached for the lever intending to pull it in order that the front end of the wagon would be hoisted and the corn would be dumped from the wagon-bed into the hopper. Mr. Two had died prior to the trial and plaintiff was the only occurrence witness. His testimony is that "the rain had got on the belt and made it slip a little. I

turned around and looked toward the machine and my right foot slipped on the mud. I piveted on my left foot and lifted my right foot and when I set it down I slipped a few inches. I don't remember how far it was, I don't know. My right foot must have slipped under the rod that was revolving right next to the corn elevator and because of the slipping, my pants leg caught on the knuckle. I had on ordinary overalls, high top shoes, with my pants legs on the outside. When I slipped my pants leg came in contact with the rod. The machinery did not break. There was nothing broken when I slipped except the belt was acting up. I think my foot slipped four or five inches in the mud. I felt it slip from where my foot was standing and it went from where I was standing to the rod. My trousers got caught in this tumbling rod and this tightened up my trousers and my leg went underneath the shaft. I was thrown over the top of it and broke my leg and was lying on my right side. I saw the front part of my foot, my toes were around where my heel was and both bones were broken, sticking out about six inches.''

The allegations of the complaint are that this revolving shaft or tumbling rod was rough and had projections extending therefrom and was not covered, shielded or boxed and in such condition was a dangerous instrumentality; that the plaintiff was an inexperienced youth in the use of such machinery and unaware of the dangerous conditions under which he was required to work; that the defendant Daniel Dow, knew, or in the exercise of reasonable care, ought to have known that said shaft was a dangerous instrumentality and he should have warned and pointed out to the plaintiff the dangers and hazards incidental to his employment but that he, the defendant Dow, failed to so instruct, warn or point out to the plaintiff the dangers and hazards incidental to his employment.

These charges that the plaintiff was an inexperienced youth in the use of machinery, that he was

unaware of the conditions under which he was required to work and that the defendant, Dow, had failed to warn, instruct or point out to the plaintiff the dangers and hazards incidental to his employment are not sustained by the evidence. 'The undisputed evidence is that the plaintiff had attended high school for one and one half years, that he was an intelligent young man between nineteen and twenty years of age, was familiar with general farm work and knew how to operate farm implements, including power machinery ordinarily in use on farms. As an intelligent young man he knew the conditions under which he was required to work and that the ground upon which he stood was muddy and slippery and testified that he had been instructed by Mr. Dow how to start the tractor, how to use the corn elevator and that everything in connection therewith had been explained to him and he had been cautioned about the danger of stepping over the revolving shaft. After he was shown how to operate the machinery the plaintiff testified that he ''went ahead, hauled some six or seven loads and operated the whole business myself.''

The revolving shaft or rod against which appellant slipped was not covered but exposed and his counsel suggest that had appellees inverted a hog trough or wooden box over it the requirements of the law would have been met and the accident would not have occurred. Had the revolving rod been covered, perhaps appellant would not have been injured but it does not follow that appellees are liable in this action because the rod or shaft was unprotected.

In *Stumpf v. Corn Products Mfg. Co.*, 155 Ill. App. 194, the plaintiff was injured while attempting to oil the parts of a jack shaft, the base of which was two 10 x 10 inch timbers bolted to the floor. A large pully was attached to the shaft, neither of which were guarded in any way. In passing along and upon this 10 x 10 inch timber and while attempting to pass

the large pulley upon the shaft, his foot slipped and he was caught in the pulley which was revolving at from five to seven hundred revolutions per minute and sustained the injuries for which he sought to recover. In holding the employer not liable for the injuries which its employee received, the court said: "It was not necessary to have guards placed over these pulleys for the purpose of informing anybody that they were dangerous. It was apparent to any ordinary person that a pulley, revolving at the rate of from five to seven hundred revolutions per minute, was a dangerous piece of machinery to come in contact with and the ordinary instinct of self-preservation would compel a person to keep away from it. The cause of this injury as shown by appellee in his own testimony was that he slipped from this 10 x 10 inch timber and fell upon the revolving pulley. An employer cannot be held responsible for an accidental mis-step of a servant. If the timber at the point where he slipped had become oily or slippery, it was his duty to do the oiling of this machinery and pass over it a great many times each day, and if the beam became slippery by reason of oil, it was a fact which was more easily, more readily discernible to him and one which he had greater opportunity to know and ascertain than the employer. The facts as herein set forth are virtually undisputed in this record. Appellee knew of all these conditions, continued to work and without any complaint whatever, and under the rule as laid down by the Supreme Court of this state in the cases of *Montgomery Coal Co. v. Barringer,* 218 Ill. 329; *Karr Supply Co. v. Kroenig,* 167 Ill. 560; *Howe v. Medaris,* 183 Ill. 288 and by the Appellate Court of the First District in *Steffen v. Illinois Steel Co.,* 140 Ill. App. 551, which follows the rule laid down in the above cases, appellee assumed the risk, and the injury occasioned as shown by the facts in this case was one of the risks assumed by his employment and there can be no recovery in this action."

■ In *Collins v. Kurth,* 247 Ill. App. 156, affirmed in 322 Ill. 250, a recovery was denied a farm hand for the loss of a hand through injuries received in an ensilage cutter, the court holding that there could be no recovery upon a declaration which charged a failure upon the part of the defendant to warn the plaintiff of the latent danger in the machine where it appeared that the plaintiff had actual knowledge of the danger that existed and of what it consisted and that any failure to warn the plaintiff was not the proximate cause of the accident or did not in any manner contribute to the plaintiff's injury. See also *McCormick Harvesting Mach. Co. v. Zakzewski,* 220 Ill. 522.

■ In *Chicago & E. I. R. Co. v. Heerey,* 203 Ill. 492 at page 497, the court quotes from *Swift & Co. r. O'Neill,* 187 Ill. 337 at page 342, to the effect that as between employer and employee the latter assumes all the usual known dangers incident to the employment and continues: "It is also the rule that an employee of sufficient age and experience is chargeable with knowledge of the ordinary conditions under which the business is conducted and its ordinary risks and hazards, and will be presumed to have notice of and to have assumed all such risks and hazards which to a person of his experience and understanding are, or ought to be, patent and obvious." At page 502 of the same opinion the legal principles involved in the doctrine of assumption of risk and contributory negligence are distinguished. It is there said: "Contributory negligence and assumption of risk are entirely different things in the law. Altho the two questions may both arise under the facts of a case, yet they are wholly separate and distinct. Every person suing for a personal injury must show that he was in the exercise of ordinary care and caution for his own safety so that the question of contributory negligence may be involved in every case; but an employee may have assumed a risk by virtue of his

employment or by continuing in such employment with knowledge of the defect and danger and if he is injured thereby, altho in the exercise of the highest degree of care and caution, and without any negligence, yet he cannot recover.''

In *Simmons v. Chicago & Tomah R. Co.*, 110 Ill. 340, 347 it is said: ''If a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury.''

Appellant, although a minor, by his contract of employment, took upon himself the natural and ordinary risks and perils incident to the service in which he engaged and he assumed the ordinary hazards of such employment in the same manner as an adult assumes them. (*Gartland v. Toledo, W. & W. Ry. Co.*, 67 Ill. 498; *Chicago Anderson Pressed Brick Co. v. Reinneiger*, 140 Ill. 334; *Ryan v. Armour*, 166 Ill. 568.) The undisputed evidence is that he had knowledge of the character of the work in which he was engaged, the mechanical method employed in doing it and the dangers incident thereto. He knew the shaft was revolving, the conditions surrounding its operation and that the ground under his feet had become muddy and slippery. The danger to which he was exposed was not hidden but was obvious. He was of sufficient age, intelligence and discretion to understand and appreciate the risk to which he was exposed and must be held to have assumed the hazard and peril incident to his employment.

It is true, as counsel for appellant argue, that the questions of whether appellant assumed the danger and whether he was guilty of contributory negligence are ordinarily questions of fact for the jury to pass upon, yet where, as here, there is no

conflict in the evidence it is the duty of the trial court to apply well recognized principles of law to the uncontradicted evidence and when that is done the only reasonable conclusion that can be arrived at from all the facts appearing in this record is that appellant assumed the hazard of working around this revolving, unprotected shaft and joint, knowingly exposed himself to that known danger and this precludes any recovery.

The trial court, therefore, did not err in instructing the jury to return verdicts of not guilty as to both defendants and the judgments rendered upon these verdicts will be affirmed.

*Judgments affirmed.*