Robert Kelly, Plaintiff-Appellee, v. Fletcher-Merna Co-Operative Grain Co., a Co-operative Association for Pecuniary Profit, Defendant-Appellant.

Gen. No. 10,309.

Third District.

April 6, 1961.

Rehearing denied May 2, 1961.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Livingston, Barger & Brandt, and Bernard T. Grimes, of Bloomington, for appellant.

Costigan, Wollrab & Yoder, and Eugene J. Larkin, of Bloomington, for appellee.

ROETH, JUSTICE.

Suit was brought by plaintiff herein to recover damages for an injury he sustained while doing work for the defendant. A trial by jury resulted in a verdict for the plaintiff, upon which judgment was entered. Post trial motions were made and denied and this appeal taken.

Defendant, a cooperative association for pecuniary profit, contracted with the plaintiff to transfer corn from government storage bins to certain storage bins of the defendant some distance away. The agreement was oral and it is clear that plaintiff was to do all work necessary in connection with the transfer of the corn from one bin to the other and was to use his truck for such purpose. The defendant also engaged four others, apparently for the purpose of assisting in the same job. Plaintiff was to be paid at the rate of 1¼¢ per bushel. From the evidence it appears that the plaintiff and the others had performed like work for the defendant on several occasions and it further appears that this time they were required to do a little more. There was no definite agreement as to

420

how the work was to be performed except that the evidence indicates it was to be performed in the same manner as the parties had previously done the work. The precise nature of the additional work does not appear in the record but it is clear that they were to be paid ½¢ a bushel more for their labors on this occasion. Two of the defendant's employees were engaged to do general work in the area. Included in their job was the task of preparing the storage bins for the removal of the corn, apparently assisting in some measure with loading of the trucks and the cleaning out of the bins after the corn had been removed. Defendant's employees dug a hole two to three feet in diameter and approximately 15 inches deep at the base and directly in front of a small door located at the base of the bin. A canvas was placed over the hole and the door of the bin opened permitting the corn to flow out into the hole and on top of the canvas. The purpose of the canvas obviously was to keep the corn from mixing with dirt. The corn was then loaded from the hole onto the truck by means of two augers. This piece of machinery consisted of two tubes, each approximately 30 feet in length. The augers fit into the length of each tube and extended a short distance out of the tube at the loading end. The exposed portion of each auger was then placed in the canvas covered hole and picked up the corn carrying it up through the tube and into the trucks. The equipment was operated by a motor and the augers driven by a V belt or V belts running off pulleys attached to the motor and to a pully assembly on the augers. The motor itself was attached to framework that could be moved so as to loosen and tighten the tension on the belts. When the tension on the belts was released they apparently spun on the pulley and the augers stop turning. The framework upon which the motor rested could be moved by means of a bar or handle,

hereinafter referred to as the clutch, projecting from the framework. This clutch was locked by means of a nut and bolt arrangement and apparently in order to move the clutch it was necessary to loosen the nut and bolt, after which the clutch could be activated, loosening the tension on the V belts and thereby stopping the turning of the augers. The particular machine used in this case is not of standard make in that it contained two 6-inch augers laid side by side, whereas the standard machine contains only one such auger. The exposed portion of the augers on the loading end were not covered, nor was there a guard near such exposed portion. There is testimony that such guards are available but not sold as standard equipment on this make of machine, but can be purchased as an optional piece of equipment, whereas other makes provide such guard as standard equipment.

Plaintiff had been on this particular job some six or seven days before he was injured and had used this particular machinery during that time and apparently on several other jobs of similar nature for the defendant. The testimony also shows that the plaintiff and his brother, who was also engaged by defendant on this job, were experienced farmers and operated a 520 acre farm nearby and that they had used this machine on previous occasions on loan from the defendant. The testimony is conflicting as to whether the clutch mechanism on this machinery was operative and there is also testimony that when the augers were stopped and then restarted while full of corn, the V belt would fly from the pulleys and thus entail the restopping of the motor and reassembling of the V belt to the pulleys. It appears to be conceded that the practice followed in unloading the bin and loading the truck was the accepted practice of all concerned. The job was carried out in a manner desired by both defendant and plaintiff. The end of

the augers were placed into the canvas covered hole and the door at the base of the bin opened by means of a pick. The corn would then flow from the bin into the hole and the augers would transport the corn into the truck. When the truck was filled the door to the bin was closed with the use of a pick and the augers continued to operate until the corn was cleaned out of the hole and out of the auger tubes. It apparently was not contemplated that plaintiff would use the clutch to disengage the augers before closing the bin and apparently he could not stop the augers by turning off the motor before attempting to close the door to the bin. Had this procedure been followed it would have then become necessary to restart the motor to clear the augers and from the testimony it appears clear that under these circumstances the motor would not operate for any lengthy period and it would take a considerable length of time before the entire augers could be cleared of corn. It is also clear that the pick had to be used because of the condition of the bin door. One of defendant's employees, manager of one of its elevators, testified that the procedure followed by plaintiff and others was the procedure he anticipated the plaintiff would use on this job.

The augers and pick were the property of the defendant and while there was no definite agreement that plaintiff would use this equipment the conclusion is inescapable that it was contemplated that plaintiff would in fact use this equipment.

At the time of the accident plaintiff was loading his truck alone and he is the only witness to the accident. One of defendant's employees was not on the grounds and the other was cleaning out a bin some 300 or 400 feet away. Plaintiff loaded his truck and started to close the bin door with a pick. The augers extended away from the bin and in a northwest direction and plaintiff was standing to the west of the

augers. He testified that his left foot was about 2 feet away from the open end of the augers and he was standing on the canvas and on top of some kernels of corn. As he applied pressure to close the door of the bin his foot slipped into the augers, injuring him.

After the close of plaintiff's evidence and the close of all evidence, defendant moved the court for a directed verdict and tendered instructions to that effect. The lower court denied the motions and submitted the case to the jury. After the verdict was entered, defendant moved the court for judgment notwithstanding the verdict, incorporating its two previous motions.

█ On appeal from a decision granting or refusing a directed verdict in favor of defendant, the only question for review is the question of law, whether there is any evidence, standing alone and when considered to be true, together with the inferences which may be legitimately drawn therefrom, which fairly tends to support the cause of action, so that the jury might reasonably have found for plaintiff. Seeds v. Chicago Transit Authority, 409 Ill. 566, 101 N.E. 2d 84; Lindroth v. Walgreen Co., et al, 407 Ill. 121, 94 N.E. 2d 847. The question is whether there is a total failure of evidence, under these circumstances, to prove the essential elements of plaintiff's case. Wills v. Paul, 24 Ill. App. 2d 417, 164 N.E. 2d 631.

█ While the defendant raises other points to sustain its position, we feel it necessary to consider only one of the points so raised. The point is that plaintiff assumed the risk of his employment. Defendant in answer filed a general denial and plaintiff contends it was incumbent on defendant to affirmatively plead the same. In Huff v. Illinois Central Railroad Co., 279 Ill. App. 323, at page 330, the court said:

"In this case, the facts upon which plaintiff bases his charge of negligence are the very facts

from which the assumption of risks arises and it is our conclusion that the general issue plea traversed it and that it was not necessary for the defendant to plead it specially."

See also Wills v. Paul, supra. The same can be said in the case at bar. The defense, under the facts here involved, was available to the defendant on a general denial of the complaint.

The undisputed facts of the case are that plaintiff was a mature adult, 33 years old, and had been farming 10 years. He was well acquainted not only with the job, but with the equipment, its faults and defects. He had been on the job 5 to 7 days without complaint at the time he was injured, and had used the equipment prior to that time. He appeared to be as familiar with the equipment as any one in the employ of defendant. He knew of the hole and canvas, and it must have been evident that a misstep would injure him. He knew the corn on top of the canvas would cause slippery footing. The testimony is clear that it was necessary to use the pick to close all the doors to the grain bins while the job was in progress. While he did the work in a manner accepted by defendant, there is no proof he was compelled, requested or told to do it in that fashion. The choice was his. In Stahl v. Dow, 332 Ill. App. 233, 74 N.E. 2d 907, cited and relied upon by this court in Wills v. Paul, supra, the court held:

"Contributory negligence and assumption of risk are entirely different things in the law. Although the two questions may arise under the facts of a case, yet they are wholly separate and distinct. Every person suing for a personal injury must show that he was in the exercise of ordinary care and caution for his own safety so that the question of contributory negligence may be involved

in every case; but an employee may have assumed a risk by virtue of his employment or by continuing in such employment with knowledge of the defect and danger and if he is injured thereby, although in the exercise of the highest degree of care and caution, and without any negligence, yet he cannot recover."

Swift & Co. v. O'Neill, 187 Ill. 337, 58 N.E. 416; Chicago & E.I.R. Co. v. Heerey, 203 Ill. 492, 68 N.E. 74; Wills v. Paul, 24 Ill. App. 2d 417, 164 N.E. 2d 631.

Plaintiff contends that assumed risk is a question of fact for a jury's determination. In Stahl v. Dow, supra, the court said:

"It is true . . . that the question of whether appellant assumed the danger . . . are ordinarily questions of fact for the jury to pass upon, yet where, as here, there is no conflict in the evidence it is the duty of the trial court to apply well recognized principles of law to the uncontradicted evidence and when that is done the only reasonable conclusion that can be arrived at from all the facts appearing in this record is that appellant assumed the hazard . . . knowingly exposed himself to that known danger and this precludes any recovery."

Plaintiff cites Stone v. Guthrie, 14 Ill. App. 2d 137, 144 N.E. 2d 165, as authority for his contention. Plaintiff misinterprets the language we used in that case. There plaintiff charged defendant with negligence in placing the wagon in such a position and angle that he was unable to maintain his balance on top of the blower and carelessly failing to release the clutch and stop the augers in time to prevent the injury. There was testimony that tended to prove these allegations and in each instance the charge of negligence referred

to an immediate act of defendant, not initially bargained for by plaintiff. We stated there:

"Thus the master . . . is . . . required to provide reasonably safe machinery . . . a reasonably safe place to work . . . to inform and warn unskilled servants of the danger of a situation and where as in this case he undertakes the operation of dangerous machinery at which the servant is working, to use diligence and care in its operation . . . And the servant has the right to *assume* that the master will perform the duties imposed on him . . . " (Emphasis ours).

There plaintiff assumed certain risks in doing the work he was hired to do, but had the right to assume his employer would perform those duties imposed on him. He could not, as a matter of law, be held to assume the risk of something he neither could foresee or that he did not bargain for. Whether he should have been able to foresee the sequence of events that lead to his injury and if so, assumed the risk that caused the injury, are clearly jury questions. The case is not controlling here.

■    Here, as in Stahl v. Dow, supra, and Wills v. Paul, supra, plaintiff was injured by the very circumstances confronting him when he took the job. He worked 5 to 7 days on the job, without complaint, and without attempting to alleviate the condition that caused the injury. As an independent contractor, there can be no dispute that he could have changed his method of work. Plaintiff also cites Worthey v. Cleveland C.C. & St. Louis Railway Co., 251 Ill. App. 585. That case is distinguishable on its facts from the case at bar for in that case there was evidence to take the case to the jury to determine the issue of assumed risk.

Plaintiff also contends that defendant waived its right to appeal by his failure to specifically raise the question of assumed risk in its post trial motion. We cannot agree. Defendant moved for a directed verdict at the close of plaintiff's evidence and the close of all evidence and tendered appropriate instructions; it subsequently incorporated each motion in its post trial motion. By so doing, defendant preserved this vital question for the court on appeal.

For the reasons stated herein, the judgment of the lower court will be reversed.

Reversed.

CARROLL, PRESIDING JUSTICE and REYNOLDS, JUSTICE, concur.