HARRY RYAN

*v.*

PHILIP D. ARMOUR *et al.*

*Filed at Ottawa May 11, 1897.*

TRIAL—*when court may instruct jury to find for defendant in action for
negligence.* The trial court may instruct the jury to find for the de-
fendant, in an action for negligence, where the evidence does not
tend to prove the elements necessary to a recovery.

*Ryan* v. *Armour*, 67 Ill. App. 102, affirmed.

WRIT OF ERROR to the Appellate Court for the First
District;—heard in that court on writ of error to the Su-
perior Court of Cook county; the Hon. ARTHUR H. CHET-
LAIN, Judge, presiding.

KING & GROSS, (ANDREW J. HIRSCHL, of counsel,) for
plaintiff in error.

CUSTER, GODDARD & GRIFFIN, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Plaintiff in error sued defendants in error for injuries
to the first finger of his right hand, caused by striking
the finger on a hook while in their service hanging hogs'
tongues on hooks in a cooling room. When the evidence
was all in, the defendants, claiming that such evidence
was not sufficient to sustain a verdict for the plaintiff,
asked for an instruction directing a verdict in their favor,
and the court gave it. A verdict was returned accord-
ingly, and judgment was entered. The Appellate Court
affirmed the judgment, and thereupon certified that the
"cause involves questions of law of such importance" that
it should be passed upon by this court.

The tongues were five or six inches long, and they came
into the cooling room hot and steaming. Each tongue

was hung by the small end upon a hook, and they were taken off the following day when cold and stiff, and were thrown down a chute into the cellar. The hooks were driven in racks about six feet high and ten or eleven feet long, and there were five or six rows of hooks on each rack. The hooks were driven straight into the racks, and projected about an inch, and turned upward at nearly a right angle three-quarters of an inch, ending in a sharp point. They were from four to four and a half inches apart. Plaintiff testified that in hanging a tongue on one of these hooks he struck his finger on the next hook. At first he could see where the hook went in. The skin was broken, but it did not bleed. The next day the wound could not be seen, but it continued to pain him, and after treatment part of the bone had to be taken out from the knuckle to the next joint, making the finger stiff and about one inch shorter than it had been.

It was alleged in the various counts of the declaration that plaintiff was a youth of tender years; that he was hired as a common laborer, and that hanging tongues on hooks was a hazardous occupation, for which he did not have the requisite skill, knowledge or experience. The charges under which it was claimed that defendants were liable for the accident to him were, that they were negligent in setting him to work at hanging tongues and not warning or instructing him as to the dangers of that employment; in not sufficiently lighting the cooling room; and in allowing the hook upon which he struck his finger to be turned out of a vertical position toward the hook on which he was hanging the tongue.

Plaintiff testified that he was injured in the latter part of July, 1890,—about the 23d,—and that he was nineteen years old on October 13 following. His evidence therefore contradicted his averment that he was of tender years, and incapable of intelligently appreciating the nature and hazards of the employment. He had passed

beyond the stage of thoughtless childhood, and was not the subject of especial care by his employers on account of his age. He testified that he was hired generally to do, and did, whatever the foreman directed. There was nothing said about the rate of wages, but he was paid $1.50 a day. His employment began in May, 1890, and he worked most of the time for two months attending the door to the chill room as the men went in and out with the trucks. During that time he also did some other work cleaning up the floors. At this time, in the latter part of July, he was sent to assist in hanging tongues. The evidence did not establish that this work belonged to a class fairly denominated hazardous or dangerous, as alleged in the declaration. Almost all kinds of work require some degree of care and observation on the part of the workman, but this operation of hanging up hogs' tongues is about as simple as any of the common avocations in which unskilled labor is employed. Besides, whatever of danger there was about it was not hidden, but was open and obvious. Plaintiff could see the hooks as well as anybody, and he worked with them, hanging up fresh tongues and taking off cold ones, all of one day and the next day until four o'clock before the accident happened. He had ample opportunity to learn all that could have been explained to him respecting the hazards attending the employment. The evidence did not prove any negligence on the part of defendants in setting him to work at hanging the tongues, or in failing to warn him that he was about to engage in a hazardous undertaking, or to point out perils to which he was exposed.

The cooling room was very large, and there were some gas jets in other parts of it, but in the corner where the tongues were hung the light furnished was by a large kerosene lamp, which could be moved from place to place. The room was kept at a temperature of thirty-eight to forty degrees. There were no windows, and it was not practicable to have many lights on account of

the heat from them. The kerosene lamp would grow dim from smoke and moisture by evening, so as not to give as clear a light as in the morning, but there was an entire failure of evidence that the condition of the room with respect to light contributed in any way to the injury. There was no proof that the light was not sufficient to clearly distinguish the hook, or that plaintiff struck it from inability to see it.

A hook would sometimes get turned from a vertical position by use,—especially in taking off the cold and stiffened tongues. The hook in question was so turned at an angle of about forty-five degrees, and this brought it half an inch nearer to the one on which plaintiff hung the tongue. In order to recover on account of this condition it was necessary for plaintiff to prove a want of proper care and supervision by defendants permitting the existence and continuance of such condition or permitting a general unsafe condition of the hooks, and upon this question there was also a failure of proof. There was no evidence when the hook was turned, or of any fault in regard to it, or of any general unsuitable or insecure condition of the hooks as a whole. Under such circumstances, the fact of the hook being turned at the time of the accident was no evidence of a want of reasonable care on the part of the defendants with respect to the appliances, and the injury to plaintiff must be classed as an accident occurring unexpectedly, without the fault of any person, and not creating any liability.

We think that the court was right in giving the instruction directing the verdict, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*