## E. J. Reynolds and Charles Carey Reynolds, partners, etc., v. William J. Grace.

### Gen. No. 4,394.

1. ASSUMED RISK—*what considered in determining whether danger is appreciated.* The ability of a servant to understand the dangers connected with his work is not to be determined by a consideration of his age alone, but his intelligence, capacity and experience must be considered.

2. MASTER—*when, does not owe duty of instruction.* A master is under no obligation to instruct or warn a servant of a danger which is as well known to him as to such master, and which does not arise from a defective appliance, but is an incident of the method of performing the work in which such servant is engaged.

Action on the case for personal injuries. Appeal from the Circuit Court of La Salle County; the Hon. RICHARD M. SKINNER, Judge, presiding. Heard in this court at the April term, 1904. Reversed, with finding of facts. Opinion filed August 24, 1904.

DUNCAN, DOYLE & O'CONOR, for appellants.

J. E. COLEMAN and HUTTMANN, BUTTERS & CARR, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an appeal from a judgment rendered in the Circuit Court of La Salle county for damages on account of personal injuries sustained by appellee. On the 9th of September, 1899, appellee, then eighteen years of age, had his leg broken while in the employ of the appellants.

It is complained in the declaration of one count and two additional counts filed later, that appellee, an inexperienced youth, was ordered by the foreman of the appellants to perform dangerous work in character, about which appellee had no experience and was ignorant; that while in performance of said dangerous work, on account of his inexperience, and his youth, and further on account of the unsafe place supplied him to work and the defective and improper appliances furnished him with which to work, the appellee,

while in the exercise of all due care for his own safety, had
his leg broken.

The appellee had a verdict and judgment for $1,000, from
which this appeal is taken.

Appellants were the owners and operators of a sand bank
near Utica, in La Salle county. The sand bank is located on
the north side of the track of the Chicago, Rock Island and
Pacific Railroad, about 375 feet from the railroad tracks,
and connected with the railroad by a switch or tramway
over which small tram-cars, or trucks, hauled the sand from
the bank to the railroad cars for shipment. These tram-
cars would hold four or five tons of sand. The tramway
was almost level from the sand bank until it reached a
point within about 100 or 150 feet of the railroad; from
this point on, south to the railroad, there was a slight incline,
the tramway being about two feet lower where the sand was
dumped in the railroad cars, than at the point where the
incline begins. The sand was loaded into these tram-cars
with shovels, and when a carload was ready to go, a mule
was hitched to it and it was pulled out to the point where
the incline commenced, and the car ran down the incline
by gravitation. To take a tram-car of sand down and
dump it required three men, one to drive the mule, one to
work the lever that dumped the sand and one to do the
"pig-tailing," whose duty is hereafter explained. The duty
of the mule driver ended, for the time being, when the
mule was detached from the car at the point above referred
to. He drove his mule down after the car to bring the
empty car up to the bank again. The duty of the second
man was to ride the car down and work a lever which
released the sand and dumped it into the railroad car. It
was found that sometimes the car, running down by gravi-
tation, would acquire such speed and force that it would
run off the dump and fall into the railroad car, which
involved delay and expense to get it out again. To obviate
this danger, a rope twenty feet long, one and one-quarter
inch in diameter, was fastened to a tie midway between the
rails on the tramway and about twenty feet from the point

where the tram-cars should stop. The other or loose end of the rope had an eye or ring on it, which was dropped over a hook, fastened into the center of the rear end of the tram-car. It was the duty of the third man to ride down on the rear end of the tram-car until he came to the north end of the rope, which should be found lying near the center of the track, straightened out so that the end with the eye or ring would be forty feet from the stopping place of the car, pick up the rope and drop the eye over the hook in the car; this was for the purpose of preventing the car from going over at the dump. The business of handling the rope as above shown was called " pig-tailing," and the man who did it the " pig-tailer." It was the duty of the pig-tailer to detach the rope after the load was dumped, and straighten it out in readiness for the next car. Appellee was pig-tailing at the time of the accident; he rode the car down, caught the rope, and successfully hooked it on the car; he got off the car and followed it on down, and when within six or eight feet of the dump he discovered that the " pig-tail," or rope, was coiled around his leg; he was unable to extricate himself before the car dumped and he was lifted up in the air and his leg broken. The tram-car was equipped with a safe brake, in good working order, the lever of which was in the rear, within a few inches of the pig-tailer, and it was his duty to work the brake and stop the car in case it became necessary, but appellee claims he did not know it was his duty to work the brake and stop the car. The evidence shows the car could be stopped in six or eight feet by means of the brake. Appellee was eighteen years old at the time of the accident, and had been employed about the sand banks off and on since he was ten or eleven years old; at first he was employed at the washer, doing boys' work, but the last two years he was doing a man's work shoveling in the pit. In the pit work there are from six to eight men engaged in loading a car, and when the load is ready three of them take the car out. When the car in question was ready to go out appellee insisted " that he would pig-tail or go home." While the three men were

engaged in taking out a car, the others of the crew were shoveling down sand from the bank for the next load. This was harder work than taking out a car, and of the three positions in taking out a car, pig-tailing was considered the easiest work.

Appellants contend : (1) that the evidence fails to support any of the material averments in the declaration; (2) that no actionable negligence of appellants is proven; (3) that appellee was familiar with all conditions and dangers and assumed the risk; (4) that the accident was the result of appellee's contributory negligence or the negligence of a fellow-servant.

There is no contention on the part of appellee that the car or rope was out of order or that they were not reasonably safe and suitable for the work to be performed.

It is contended by appellee that appellants ordered appellee to pig-tail the car and that it was a dangerous work and that appellee by reason of his youth and inexperience was ignorant of the danger of the work, and that he was not warned or instructed by appellants as to these known dangers. While it is true appellee was only eighteen years old, yet he had been engaged in work about this sand bank so long, that we would naturally expect him to be entirely familiar with all the conditions; and any doubt about his knowledge on this subject is removed by his own testimony in the case. His ability to understand the dangers connected with the work, and to take proper precautions to avoid them, is not to be determined by a consideration of his age alone, but his intelligence, capacity and experience must be considered:

A question, not unlike this in principle, arises where the rule as to the reasonable care required of a child for his own safety, is involved, and it has been held in such cases that it is not proper to limit the inquiry to the age of the child alone, but the capacity, the intelligence, the knowledge, the experience and discretion of the child are evidentiary circumstances to be considered. Thompson on Negligence, vol. 1, sec. 309; Illinois Iron & Metal Co. v. Weber, 196 Ill. 526,

Reynolds v. Grace.

and cases there cited.  Applying this rule to the case of
appellee, the fact that he was only eighteen years of age
·practically loses all of its force, in face of the other facts
and circumstances proven, and he must be regarded, so far
as the rules of law applicable to his case are concerned, as
possessed of substantially as much capacity, knowledge and
experience respecting the work in which he was engaged
and the danger arising therefrom, as an adult.  The hy-
pothesis is that a minor is inferior to an adult, as respects
both the ability to obtain material and necessary informa-
tion as well as the ability to draw proper conclusions from
information obtained, but the degree of such inferiority rep-
resents every stage of growth and development from the
helpless infant to the fully developed adult.  As youth and
its weakness are about to give way to manhood and strength
the distinction becomes less marked, and this difference is
further obliterated by the circumstance, if it exist, that the
minor had enjoyed special opportunities for knowledge and
experience respecting the conditions under which the injury
occurred.  As was said by Justice Cartwright in Ryan v.
Armour, 166 Ill. 568:  " Plaintiff testified he was injured
in the latter part of July, 1890, about the 23rd, and that he
was nineteen years old on October 13th, following.  His
evidence therefore contradicted his averment that he was
of tender years, and incapable of intelligently appreciating
the nature and hazards of the employment.  He had passed
beyond the stage of thoughtless childhood, and was not the
subject of special care by his employers on account of his
age."

In the case above quoted from, the plaintiff had only
worked one day and until four o'clock the next, at the work
in which he was injured.  He had not been instructed as
to the danger, yet his case is disposed of by precisely the
same rules as if he had been twenty-one years of age.  If
minority was of no avail in Ryan's case, with such a lim-
ited experience, what effect can it have on appellee's case
with his long experience about the sand bank, when there
is only a few months difference in their ages ?

The averment in the declaration "that appellee did not know because of his youth and inexperience that the work of attaching the rope to the hook was dangerous," fails, there being no proof to support it. Appellee must be held to be chargeable with actual or constructive knowledge of the danger of becoming entangled in the rope and thereby injured. Such a danger existed, not because of a defect in any of the appliances, but as an incident to the method by which the work was being done, and was presumably as well known to appellee as to appellants. Under these circumstances appellants did not owe appellee the duty of instructing him or warning him of such dangers. Consolidated Coal Co. v. Scheller, 42 App. 620; Chicago & North Western R. R. Co. v. Donahue, 75 Ill. 106; Labat on Master and Servant, sec. 239. It is not clear just what caused appellee to get caught in a coil of this rope; if the rope had been carelessly left with a loop in it, and not properly straightened when detached from the car next before the accident, then the accident was due to the negligence of the person who pig-tailed that car. The evidence tends to show that appellee pig-tailed the car before the accident, which he denies, but whether it was appellee or some other member of the shoveling crew, can make no difference; in one case it would be contributory negligence of appellee, in the other, negligence of a fellow-servant, and appellants would not be responsible in either case. If the accident did not occur by reason of the rope being left in a coil or loop by the pig-tailer of the preceding car, then it necessarily happened as a result of the manner in which appellee manipulated the rope, or by his carelessly stepping into a loop or fold of the rope as it was doubled back over itself while the car was drawing it down.

There is no view that can reasonably be taken of the facts developed on the trial which shows a cause of action in appellee for this injury.

The judgment is reversed.           *Reversed.*

Finding of facts, to be incorporated in the judgment of the court:

We find as a fact that appellants are not guilty of any of the negligence charged in the declaration.

We find as a fact that the injury resulted from an assumed risk.