# Swift & Company v. Peter O'Neill.

1. MASTER AND SERVANT—*Negligence of Master a Concurring and Efficient Cause.*—If the negligence of the master operates as a concurring and efficient cause, his liability will not be relieved by other causes also concurring.

2. CONTRIBUTORY NEGLIGENCE—*What is Not.*—Where a promise is made by one in authority to the injured person, to remove a defect and its consequent danger, such person is warranted in remaining in the employment for a reasonable time to await the fulfillment of the promise and without accepting the risk in question as an assumed risk, or becoming thereby guilty of such contributory negligence as will bar a recovery.

3. EVIDENCE—*Exhibiting Injured Member.*—There is no error in permitting a plaintiff to exhibit his injured leg to the jury, nor in declining to compel him to remove the salve from the wound.

4. SAME—*Proofs Admissible Under the General Allegations of the Declaration.*—The proof of occupation as a brick-layer and inability to labor at that work, are admissible under the general allegations of the declaration.

5. DAMAGES—*When $7,000 Not Excessive.*—Where the evidence is quite sufficient to warrant the jury in concluding that the injury prevented the person from continuous labor at his usual occupation, consistently with any hope of a recovery, or where it appears that he might work and did work, but that a continuance of such labor would involve a permanency of the ailment, and if he could recover at all, it would seem that it would be necessary to forego such labor and as well to submit to an operation, which could be scarcely regarded as less than serious, and is at best uncertain in its results, $5,000 is not excessive.

Action in Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed March 26, 1900.

**Statement.**— This suit was brought by appellee to recover damages resulting, as is alleged, from negligence of appellant.    Appellee was an employe of appellant, and during his employment was transferred from a building where he had worked into a new building which was being constructed by appellant for use in the business of smoking and curing meats.    The building was nearly if not quite completed, and consisted of several floors, each floor being

laid off in alleys, upon which alleys the various compartments for smoking meat were situate.   Each alley or passageway was provided with electric wires for lighting. In front of each smoke vault or compartment a wire was suspended from the main wire, and at the end of each of these suspended wires there was a socket upon which a globe could be screwed to make it available for lighting. Globes had not been placed upon these sockets of the suspended wires, but in working in the alleys the men carried with them a globe and attached it as it was needed in front of any particular vault.

The alleys or passageways were very dark when not lighted by the electric light.   There was evidence tending to show that this darkness of the alleys was such as to make it dangerous to work there in absence of electric or other artificial light.

Engleman, the foreman, testified that four of the employes spoke to him of the conditions, and said that "it was pretty dark; dangerous."

The evidence disclosed that appellee, when transferred to this new building, complained of the darkness of these alleys, where he was required to work, and of the danger consequent; that he made such complaint to the foreman who was over him in authority; that the foreman promised to see the assistant superintendent in regard to having lights put in, and said that they could not then stop to talk about lights, that the meat must be got out, and that afterward the foreman told appellee that he had spoken to the assistant superintendent and that the latter had said that "he would get the lights in time—to keep going."   Appellee testified that he repeated his complaint upon this almost every day, and that on these occasions the foreman told him "to go right ahead and keep going and we would get the lights in time, that he didn't have time to stop and talk any more about it."   And appellee testified that "he supposed those lights would come in, and still kept working."

While thus working it became his duty to go, with several others, to one of the floors of the new smokehouse to move

meat. Appellee, by order of the foreman, then present, preceded the others for the purpose of screwing a globe upon the wire suspended in front of the vault to be used, and thereby obtaining light for their work. The other employes followed with a truck. In order to reach the socket on the wire and attach the globe to it, appellee was obliged to get up on something, and to this end and by direction of the foreman, he climbed up on a truck which was standing there, and following the specific order of his foreman, who stood by and directed his movements, proceeded to attach the globe. While so engaged, the other men approached in the dark alley with the truck which they were bringing, and, not seeing appellee, ran their truck into the one upon which appellee stood. Appellee was thereby thrown to the floor and his leg was severely injured by being caught in the framework of the truck.

As to the extent of the injury, one of the physicians, called as a witness, testified that "the injury is permanent unless there should be an operation, and then they will have to remove a portion of the bone, which may relieve the condition entirely, and may not."

Another physician testified that the shin bone was injured; that part of the bone was dead, and that "it will set up inflammation in that leg—such a severe inflammation that an abscess or running sore will break out in the leg, and I think the inflammation would be so great that the man would have to go to bed and raise his leg above his head, provided there was no other operative procedure taken for him."

Another physician testified:

"If his occupation is such as not to require him to stand on his feet too much, why, the probabilities are he will get fairly well; but if he is to follow day labor, I don't see how he can recover, but will be troubled with that as long as he lives. * * * An operation may relieve him partially."

At the trial appellee was permitted, over objection of appellant's counsel, to exhibit the injured leg to the jury. The injured part was covered with a salve at the time, and counsel for appellant requested the court to direct this salve

to be removed to enable a better inspection of the injury. This request was denied, and counsel for appellant excepted thereto. The declaration alleges no other occupation of the appellee than that of an ordinary laborer. Evidence was admitted, over objection by appellant, tending to show that appellee had worked as a bricklayer, and that after the injury he could not perform such work. A hypothetical question was answered by an expert over objection of appellant, a part of the hypothesis being that appellee's leg was in a healthy condition before the injury. Appellee had already testified that his condition of health before the injury was "the best of health."

The issues of fact were submitted to a jury and a verdict was returned for the appellee and his damages were assessed at $7,000. After a remittitur of $2,000 upon this verdict, judgment was rendered thereon for $5,000, and from that judgment this appeal is prosecuted.

AMERICUS B. MELVILLE and FRANK J. CANTY, attorneys for appellant.

FRANCIS T. MURPHY and THADDEUS S. ALLEE, attorneys for appellee.

MR. PRESIDING JUSTICE SEARS delivered the opinion of the court.

The principal question presented upon this appeal is as to whether the complaint by appellee of the dangerous conditions arising from lack of light and the promise by the foreman and the assistant superintendent to better the conditions, are sufficient to take this case out of the application of the general rule as to assumed risks.

We are of opinion that the evidence is ample to establish the fact that the conditions arising from the darkness of the alley were dangerous conditions, and that the jury were warranted in finding that there was negligence in this regard on the part of appellant. Whether the injury was caused solely by the negligence of appellant in the failure

to properly light the place where its employe was directed to work, or such negligence was only a concurring cause together with negligence of others, who were fellow-servants, was not a question of controlling importance. In either case if the negligence of appellant operated as a concurring and efficient cause, the liability of appellant would not be relieved by other causes also concurring. N. C. St. Ry. Co. v. Dudgeon, 83 Ill. App. 528, and cases therein cited.

And a jury might well have found from this evidence that the action of the fellow-servants of appellee was not, under the circumstances, negligent.

The right to a recovery would depend, then, upon the question of whether the risk was within the assumed hazards of the employment.

The evidence is sufficient to establish a promise to remove the defect and its consequent danger, and that the promise was made by a vice-principal of appellant. There is no controversy as to the making of the promise. The foreman himself testified to it, as well as appellee. Nor is there any question but that the promise was made by those who could thereby bind appellant in relation to this employe. Engleman was foreman. To him the complaint was made. He in turn communicated it to an assistant superintendent, who was superintendent of the smoking department, and the latter promised the removal of the danger, and directed appellee, the employe who complained, to go on with his work. This promise and direction were conveyed by the foreman to appellee. It is idle to argue that the foreman and the assistant superintendent had no authority to make such repairs. It is enough that they had authority, by reason of their relationship to appellee as vice-principal of appellant, to promise to make them. By that promise appellee was warranted in remaining in the employment for a reasonable time to await the fulfillment of the promise, and without accepting the risk in question as an assumed risk, or becoming thereby guilty of such contributory negligence as would bar a recovery. M. F. Co. v. Abend, 107 Ill. 44; Weber Wagon Co. v. Kehl, 139 Ill. 644; Ridges v. City, 72 Ill. App. 142.

Swift & Co. v. O'Neill.

It could hardly be said that a reasonably prudent man might not, relying upon such promise, continue exposed to the hazard in question. The verdict is sufficiently supported by the evidence in this regard.

But it is contended by counsel for appellant that there is a distinction between a promise to repair a defect which existed when the employment was entered into, and a promise to repair a defect which has arisen during the employment. It is strenuously argued that the exception to the general rule as to assumed risks, which applies to a promise to repair a subsequently arising risk, has no application to a risk which existed when the employment was entered into, because the employer had the right to conduct his business as he chose, even to adopting methods and appliances which were not the best and safest, and the employe was free to reject the employment if he was unwilling to assume the risks and perils arising from such methods and appliances. In support of this contention several Massachusetts cases are cited. These decisions are in effect a construction of a Massachusetts statute entitled "Employer's Liability Act." Whatever analogy may be found in the interpretation of this statute to the principles of the common law, it is enough to say that we are unable to find in any Illinois decision a recognition of any such distinction between promises to repair. No Illinois case holds, so far as we are aware, that if an employe undertook an employment in which there was a hazard to which he objected and which the master promised to remove, the former might not remain a reasonable time in the employment without assuming the dangers of such hazard or making himself necessarily guilty of such contributory negligence as would bar a recovery for injury received through such danger. It would seem in reason that there could be no such distinction. The promise to repair operates in either case merely to negative the presumption, otherwise obtaining, that the employe in consideration of his hire assumed the peril of the hazard in question, or that he was guilty of such contributory negligence in remaining exposed to it as would of necessity bar a recovery. Ridges v. City, *supra.*

And it would seem to do this in the one case as well as in the other. But as a matter of fact in this case the appellee was at the beginning of his employment engaged in the old building, and it was during his employment that he was transferred to the new building and for the first time exposed to the hazards.

We are of opinion that the promise to remove the danger was sufficient in this case to prevent the application of the general rule as to assumed risks.

There is another element in this case which bears as well upon the question of negligence of appellant as upon the question of any contributory negligence on the part of appellee, and upon each supports the recovery. Appellee, when he climbed upon the truck in the dark alley to attach the globe to the wire, was acting under the direct and controlling order of his foreman, who stood by and directed his movements. Offutt v. Col. Ex. Co., 175 Ill. 472.

Appellee was permitted to testify that "he supposed those lights would come in and still kept working." Counsel for appellant complains of the admission of this evidence. Perhaps it was not necessary that appellee should thus show by direct testimony that he had relied upon the promises in remaining exposed to the danger, for the evidence discloses that the promises were made "almost every day," and up to the time of the injury, so that in the absence of direct proof the jury would have been warranted in inferring that the promise was the reason for remaining at work. But the admission of the evidence could in no way have prejudiced appellant. It only showed directly and, we think, properly, that which is otherwise apparent and uncontradicted.

There was no error in permitting appellee to exhibit the injured leg to the jury (Springer v. City, 135 Ill. 552; City v. Dougherty, 153 Ill. 163), nor in declining to compel him to remove the salve from the wound. In each instance the action of the trial court was largely a matter of sound discretion, upon consideration of all surrounding circumstances, and we are unable to say that the discretion was abused.

The proof of occupation as a bricklayer and inability to labor at that work, was admissible under the general allegations of the declaration.  C. & E. R. R. Co. v. Meech, 163 Ill. 305.

We regard the hypothetical question complained of as proper so far as the objections raised are concerned.  The testimony of appellee that his health had been "the best" before the injury was enough to warrant the hypothesis that the leg was sound.

Complaint is made as to the amount of the verdict.  The evidence as to the probability of a recovery is not positive. It is, however, quite sufficient to warrant the jury in concluding that the injury prevented the appellee from continuous labor at his usual occupation, consistently with any hope of a recovery.  In other words, it appears that appellee might work, and did work, but that a continuance of such labor would involve a permanency of the ailment.  If he can recover at all, it would seem that it will be necessary to forego such labor and as well to submit to an operation, which can scarcely be regarded as less than serious, and is at best uncertain in its results.  There is no ground upon which we can hold that the amount recovered is excessive. C. & E. I. R. R. Co. v. Cleminger, 77 Ill. App. 186.

The judgment is affirmed.