## Charles Flynn, Appellee, v. St. Louis National Stock Yards, Appellant.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside on review as against the evidence unless clearly and manifestly against its weight.

2. INSTRUCTIONS—*when do not assume facts in dispute.* An instruction need not continually repeat to the jury that they must find from the evidence; if from a reading of an entire instruction it appears that the jury are required thereby to find the facts referred to from the evidence it is not subject to the complaint that it assumes the existence of facts in dispute.

3. INSTRUCTIONS—*how error cured.* Even though an instruction assumes the existence of a fact in dispute such improper matter may be cured by other instructions which clearly indicate that such fact must be established by the evidence.

4. INSTRUCTIONS—*when do not ignore defense of fellow-servants.* An instruction authorizing a verdict for the plaintiff where the defense of fellow-servants is relied upon, need not negative such defense.

5. MASTER AND SERVANT—*when defense of fellow-servants will not preclude recovery.* Notwithstanding the injury sued for may have resulted in part from the negligence of a fellow-servant yet if the master was also negligent a recovery may be sustained.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911.

DAN McGLYNN, for appellant.

WISE, KEEFE & WHEELER and DANIEL DILLON, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

This was an action brought by appellee against the appellant in the City Court of East St. Louis, Illinois, tried by a jury at the August term, 1910, of said court. The trial resulted in a verdict in favor of the appellee for $2,500; appellee remitted $1,000, and judgment

was rendered in his favor for $1,500, and costs, and the appellant brings this case into this court by appeal.

The declaration alleges that the defendant was engaged at East St. Louis in the sale of live stock and that in conducting the stock business it used many sheds and pens of various descriptions; that on the 8th day of June, 1909, plaintiff was in the employ of the defendant as a carpenter, working under the orders and directions of a foreman of the defendant, and that it was the duty of the plaintiff to obey the orders and directions of such foreman, and that plaintiff was ordered and directed by the foreman to assist in doing certain kinds of work in the erection of the sheds; that defendant had erected a part of the pens and plaintiff was ordered and directed by said foreman to do certain carpenter work in the completion of such pen and that it was necessary for the plaintiff, in order to perform the work which he was required to do, to go upon and stand upon a certain runway or board, being a part of said pen or shed which had been built by the defendant prior to the plaintiff being ordered to work thereon; that it was the duty of the defendant to furnish plaintiff with a safe place to work and safe supports for such runway or board, and a safe runway or board to stand or work on while performing the work which he was ordered to do; that in the erection of said pen the defendant in disregard of its duty caused a part of said pen or shed, runway or board to rest upon or be supported by a cross-piece or piece of timber which was defective, knotted, cross-grained and of insufficient strength to sustain the weight of the plaintiff while plaintiff was standing on the runway or board attempting to do his work; that plaintiff was not aware of the insufficient strength or defective condition of said cross-piece or piece of timber and could not have known its condition by use of ordinary care, but the defendant by the exercise of ordinary care could have known that the said cross-piece or piece of timber supporting said runway or board was defective and of in-

sufficient strength to support the plaintiff while working on said runway or board; that plaintiff while standing on said runway or board engaged in doing work he was ordered to do, and while in the exercise of care for his own safety, said piece of timber supporting said runway or board in consequence of its said defective condition and insufficient strength, broke, causing the plaintiff to fall to the ground with great force and violence, by reason whereof three ribs were fractured and he was otherwise badly injured, and as a result of such fall he has been permanently injured and disabled; that he has expended a large amount of money in attempting to be cured and is damaged to the extent of $5,000. To this the defendant filed a plea of not guilty.

It appears from the record in this case that the appellant was engaged in the live stock business at East St. Louis, Illinois, and that in the prosecution of its business it deemed it proper to erect a row of hog pens; the pens when erected were about sixteen feet square and consisted of four upright posts, each 8"x8", and sixteen feet apart. These posts rested upon concrete piers about five inches high, and when the posts were raised to an upright position they were plumbed and tied or fastened to a board two inches thick, *six inches wide* and *sixteen feet long* called brackets or braces. These braces were nailed to the posts with twenty-penny nails and were about seven or eight feet above the ground. In order to prepare these posts for the roof, girders two inches by twelve inches were placed north and south upon shoulders cut in the top of these posts. There were two girders, one on each side of the posts, and the middle of the girders was strengthened by nailing blocks in between them, and the girders were further strengthened by putting braces at the end extending from the posts up to the girders. The business of building these pens was not entrusted to one man or any one set of men but the appellant had different sets of men to perform differ-

Flynn v. St. Louis National Stock Yards, 165 Ill. App. 646.

ent parts of the work. Other servants of appellant plumbed the posts, nailed the brackets thereto, placed the gang-planks thereon and placed these girders along side or near the gang-planks, and it was the duty of appellee and Hutchinson with whom he worked, to go upon the scaffolding board (which lay on the top of the stringers and near the posts) and perform the work of fitting these girders and putting them in place, and fastening them. The appellee and Hutchinson had about completed the work of placing the girder on the east end of the particular pen in question, and were about ready to commence the work of placing the girder on the west end of this pen; the girders for the west end had been thrown upon the ties or brackets at an angle from the west to the north, and the north end of the girders rested upon the north "tie" about one-third of the distance from the west post. In placing the girders at the east end of the pen Hutchinson worked at one end and appellee at the other. Hutchinson completed his work first and then passed over the north bracket or "tie" to the west end of the pen and on to the platform that was lying to the west end; and as stated by some of the witnesses, passed over this girder towards the northeast until he reached the place the girder lay upon the "tie" or bracket and at the time he reached this point the "tie" or bracket broke and caused appellee to fall to the ground. Appellee was standing, as he claims, on the platform at the east end at the time of the fall; it is claimed by some of the witnesses that he had one foot on the platform and one foot on the north "tie" or bracket. Just before the fall Hutchinson notified appellee not to come over to the west end as these girders would have to be taken down and sized, and that they could not do the work in the position in which the girders were lying when he crossed over. He says he simply stepped over on these girders waiting for some one to help him get them down to the ground and that such was the posi-

tion he would take for that purpose. Appellee and Hutchinson were furnished with a ladder to be used to pass from one end of the pen to the other so as to avoid walking upon the "ties" or brackets. Hutchinson, however, passed from the east post over to the west post on the "tie," as he says, safely. Appellee denies that he was contemplating passing over on the "tie" but says that he expected to go down on the ladder; that he could not walk the "tie."

The evidence further tends to show that the "tie" or bracket that broke was decayed, cross-grained and had knots in it at the point where it broke; that this bracket was put up by other servants and that the men who nailed it up saw its defective condition but did not know that it was to be used for the purpose of supporting any weight. The appellee and Hutchinson understood the business of putting up these girders and that these "ties" or brackets were not used for the purpose of walking over, as Hutchinson had done. Hutchinson was placed upon the witness stand by the appellant and gave his version of his position and also that of the appellee at the time of the injury. The appellant offered testimony tending to show that at the time appellee fell he had one foot upon the board, used to stand upon in placing the girders, and the other foot extending out on to the north "tie" or bracket. There was also some difference in the testimony with reference to the extent of the injury, and also with reference to some other matters which we do not regard as being very material in the view that we take of the law that governs this case. At all events, the facts were submitted to a jury for its consideration and unless we can say that the verdict of the jury was manifestly against the weight of the evidence we would not be authorized to disturb its verdict on that account.

It is claimed by appellant that the weight of the evidence tended to show that this injury was not the result of appellant's negligence, but the jurors saw the witnesses upon the stand and heard the story of each

of them and were better calculated to determine the correctness of the story of the several witnesses than we are from the record, and there being much testimony in support of appellee's contention, we do not feel that we are warranted in disturbing this verdict on the ground that it is manifestly against the weight of the evidence.

It is next contended by counsel for appellant that the first instruction given on behalf of the appellee was so vicious that it would require a reversal of this judgment.    The instruction complained of is as follows:

"The court instructs the jury that it is the duty of the master to use ordinary care to furnish a reasonably safe place for the servant to work, and it is the duty of the servant to obey the orders and directions of the master, and if you believe from a preponderance of the evidence that the plaintiff was ordered and directed by his foreman to do certain work on the runway, or board mentioned in the evidence and that in obedience of said order it was necessary for him, to do the work, to stand on said board or runway and while doing said work and while in the exercise of ordinary care for his own safety a piece of timber which supported said board or runway broke by reason of it being knotted, cross-grained and of insufficient strength, as alleged, and thereby caused said board to fall and precipitate plaintiff to the ground, thereby injuring him; and if the jury believe from the evidence that plaintiff did not know and could not have known by the exercise of ordinary care, before or while standing on said board or runway that said piece or timber that supported it was so defective, if it was defective, and could not have discovered said defect by the use of ordinary care on his part, then your verdict should be for the plaintiff, if the jury further find from a preponderance of the evidence that said foreman before plaintiff was injured as aforesaid knew or by the exercise of ordinary care would have known that said piece or timber was knotty, cross-grained and of insufficient strength to sustain the weight of plaintiff when standing on said runway or board doing said work."

The first criticism made upon the instruction is that

the latter part of it, to wit, "and of insufficient strength to sustain the weight of the plaintiff when standing on said runway or board doing said work", assumes, first, that the piece of timber which broke was of insufficient strength to sustain the weight of the plaintiff while standing on the same; and, second, that it broke while he was so standing on said runway or board doing his work. The former part of the instruction requires the jury to find from the evidence that the piece of timber which supported the board was crossgrained and of insufficient strength as alleged, and it was not necessary to repeat the statement that they must so find from the evidence. By the reading of the whole instruction it will appear further that in the former part of the instruction it makes the declaration, that if in obedience to the order it was necessary for him in performing the work to stand on the board or runway, and while doing the work, using due care and caution, the timber broke, etc., and caused plaintiff to fall to the ground, were facts which the instruction required the jury to find, that if they found he was standing there, then the effect of the conclusion of the instruction, as we read it, is that if the foreman knew or could have known that the timber was knotty and of insufficient strength to sustain the weight of the plaintiff when standing on said runway or board doing said work then the liability attached. Even if this objection were tenable, we think it is cured by the twelfth instruction given at the request of appellant, which pointedly informs the jury "that the plaintiff has alleged in his declaration that the cross piece of timber supporting the runway or board on which he was working was defective and of insufficient strength to support him while working on said runway or board, and that you are instructed that this is a material allegation which the law requires plaintiff to prove by the preponderance or greater weight of the evidence before he is entitled to recover. If after a careful, candid and impartial consideration of all the evidence, facts

and circumstances in evidence in this case you believe that the plaintiff has failed to prove this averment * * * you should find the defendant not guilty." If the instruction was open to the criticism suggested by counsel, we think when considered in connection with appellant's twelfth instruction, it appears that the plaintiff was required to prove the facts that are complained of as having been assumed by the instruction criticised.

The next criticism upon this instruction, and the one that is most strongly urged is, "that the instruction ignores completely the affirmative defense interposed on the trial, by appellant, of the negligence of the witness Hutchinson while employed as a fellow-servant of appellee." In other words, counsel for appellant takes the position that it was necessary for the plaintiff to negative the fact that the injury was caused by the negligence of a fellow-servant. In other words, he would have the plaintiff to include in this instruction the proposition that if the injury was caused by the negligent acts of Hutchinson that such would defeat a recovery by the plaintiff regardless of the question as to whether the defendant was guilty of negligence as charged in the declaration. We understand the law to be that even though a fellow-servant may be guilty of negligent acts that materially contribute to the injury, still if the master is also guilty of the negligence charged and such negligence also contributes to the injury, the master would still be liable. And we think to embody in this instruction the principle contended for by appellant would tend to direct a verdict in favor of the defendant regardless of his negligence. In the case of I. C. R. R. Co. v. Johnson, 95 Ill App. 49, the court says: "When the negligence of the master combines with the negligence of a fellow-servant to produce the injury, and neither alone is the efficient cause, the master is liable."

Again, in the case of Swift & Co. v. O'Neill, 88 Ill. App. 162, the court says: "Whether the injury was

caused solely by the negligence of appellant in the failure to properly light the place where its employe was directed to work, or such negligence was only a concurring cause together with negligence of others, who were fellow-servants, was not a question of controlling importance. In either case if the negligence of appellant operated as a concurring and efficient cause, the liability of appellant would not be relieved by other causes also concurring." See also N. C. St. Ry. Co. v. Dudgeon, 83 Ill. App. 528.

In the case of C. & A. R. R. v. House, 172 Ill. 601, this same question was presented, where the appellant had neglected to furnish a light, and another and a different crew had failed to close an open switch, and the engineer who was the fellow-servant of the plaintiff was guilty of running the train negligently and at a high rate of speed; the court says on page 603: "To recover damages for the death of House so caused, this action on the case was brought by his widow and administratrix. The declaration charged the company with negligence in taking off the light, and also in employing inexperienced and incompetent servants on the freight train, and the plea was the general issue. * * * The case presents three causes alike claimed to have been efficiently contributing to produce the unfortunate result, and so essentially that if either had been wanting it would not have been produced. These are, the absence of the switch light, the failure to close the opened switch, and the rate of speed at which the passenger train was running. Each of these is by one or the other of the parties charged to be negligence— the first, by plaintiff, to that of defendant; the second, by each, to that of the freight train crew; and the third, by defendant, to that of the engineer of the passenger train." After considering the question as to whether or not the freight train crew, which was different from that upon which deceased was working, were fellow-servants, the court concludes the opinion by saying: "It is unnecessary to consider the question of negli-

gence of the engineer in running at such a rate of speed, for though he was a fellow-servant of the deceased, and however negligent, if the deceased himself exercised due care, and his death was due to the contributing fault of either the company or the freight train crew, and *a fortiori* to that of both so contributing, the plaintiff was entitled to recover.''

Again, in the case of C. & N. W. Ry. Co. v. Gillison, 173 Ill. 264, the court says: ''If the injury to plaintiff was, in any respect, due to mismanagement of his fellow-servant, the engineer, in handling the front part of the train, that fact would not relieve defendant from liability. · The injury could not have happened but for the defective draw-bar and the breaking in two of the train, and in such a case there would only be the concurring negligence of the defendant and the engineer. Being injured by such concurrent negligence, plaintiff could recover for his injury from defendant.'' Cooley on Torts, 560; Pullman Palace Car Co. v. Laack, 143 Ill. 242.

We do not believe that this objection to the instruction is well taken. The appellant was permitted, however, to try the case upon the theory that if the brace in question was broken by the negligence of a fellow-servant that the defendant would not be liable, and was given instructions Nos. 12, 14 and 15 upon this theory, which at least put the question fairly before the jury upon his theory.

The question as to whether or not appellant was guilty of negligence in furnishing a deficient piece of timber to be used and as to whether or not appellee was using due care for his own safety, were questions of fact purely within the province of the jury, and under the instructions given in this case the jury would necessarily find both of these issues for appellee before it could render a verdict in his favor, and these issues being found for appellee it follows that even though the negligence of Hutchinson, the fellow-servant, was a concurring cause in producing the injury, this would

not relieve the appellant from liability for his negligence. We cannot say upon these questions, that were proper to be passed upon by the jury, that the verdict was manifestly against the weight of the evidence, and the judgment is affirmed.

*Affirmed.*