EUGENE HULSE, PETITIONER-APPELLEE, v. TOWNSHIP OF MADISON, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 16, 1970—Decided February 27, 1970.

Before Judges KILKENNY, LABRECQUE and LEONARD.

*Mr. James A. Robottom* argued the cause for appellant Township of Madison (*Messrs. Haskins, Robottom & Hack,* attorneys).

*Mr. Avron J. Wahl* argued the cause for appellee *Eugene Hulse* (*Mr. Norman Robbins,* attorney).

PER CURIAM. The Township of Madison (hereafter respondent) appeals from the judgment of the Middlesex County Court affirming an award to Eugene Hulse (hereafter petitioner) by the Division of Workmen's Compensation.

Petitioner alleged that on May 25, 1965, while in the performance of his duties as chief plumbing inspector of the Township of Madison, he sustained injuries which over a course of time had rendered him totally disabled. On the day in question, when he had pulled his car to the side of the road preparatory to changing a flat tire, he was

struck from behind by a school bus, which drove his car forward some 50 feet, and caused it to collide with two or three 4″ x 4″ concrete posts. His original claim petition for compensation, filed June 2, 1966, claimed injuries to the neck and lower back. A subsequent amendment added a claim for neurological disability. The petition was vigorously contested and the case thoroughly tried. The lengthy record before us covers eight trial days.

The principal point of disagreement between the parties was the nature and extent of the medical consequences of petitioner's May 25, 1965 accident. Respondent contested the extent of petitioner's disability and alleged that it was due to unrelated causes. Each side called three expert medical witnesses. The Judge of compensation was impressed by petitioner's witnesses and made an award for both temporary and permanent disability, the latter amounting to 100% of total. The award held that the disability was both orthopedic and neuropsychiatric in nature. The judge of the County Court, in a letter opinion which reviewed the testimony in detail, disallowed the contentions advanced by the township and found that the total and permanent disability sustained by the petitioner was work-connected.

This case presented a close factual question. Both the Division and the County Court resolved the facts in favor of petitioner. On review we are required to determine whether the findings made below could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole and with due regard to the opportunity of the one who heard the witnesses to judge of their credibility. *Close v. Kordulak Bros.*, 44 *N. J.* 589, 598–599 (1965). We conclude that they could have been so reached.

We are in accord with the conclusion of the County Court that it was not error for the judge of compensation to decline to conduct a physical viewing of petitioner in chambers. Respondent's orthopedic expert had testified that

there was an absence of atrophy to explain certain of petitioner's symptoms from an orthopedic standpoint, and it was proposed that petitioner be taken into chambers and stripped to the waist for the purpose of demonstrating that "his muscle tone is good" and "there was no atrophy." Although there was no objection by petitioner's attorney, the judge vetoed the idea.

While we can conceive of instances in which such a course would be extremely helpful, counsel cites no case which holds that in an action involving personal injuries the trier of the facts is under a duty to personally inspect the body of the injured person. It was discretionary with the compensation judge whether to conduct the test suggested. *Anthony v. Public Transit Co.*, 3 *N. J. Misc.* 1204, 1206, 130 *A.* 895 (Sup. Ct. 1925) ; *Swift v. O'Neill*, 88 *Ill. App.* 162 (App. Ct. 1899) aff'd 187 *Ill.* 337, 58 *N. E.* 416 (Sup. Ct. 1900) ; *Young v. Texas & Pacific R. Co.*, 347 *S. W.* 2d 345 (Tex. Ct. Civ. App. 1961) ; *Darling v. Charleston Comm. Mem. Hospital*, 50 *Ill. App.* 2d 253, 200 *N. E.* 2d 149 (App. Ct. 1964), aff'd 33 *Ill.* 2d 326, 211 *N. E.* 2d 253, 14 *A. L. R.* 3d 860 (Sup. Ct. 1965), *cert.* den. 383 *U. S.* 946, 86 S. Ct. 1204, 16 *L. Ed.* 2d 209 (1966). See also 8 *Wigmore on Evidence* (McNaughton rev. 1961), § 2220, at 194, 195; *McCormick on Evidence* § 182, at 390–391 (1954) ; Annotation, 66 *A. L. R.* 2d 1382, 1388 (1959).

We find no mistaken exercise of discretion on the part of the judge of compensation. Petitioner had already submitted to a total of seven examinations by three physicians who testified for respondent. The effectiveness of any demonstration would no doubt have depended, to some degree at least, upon the ability of the compensation judge to judge muscle tone, and the opportunity to make some comparison for the purpose of determining whether there was any degree of muscle atrophy. Its allowance would also have opened the door to the allowance of a similar demonstration by one or more of the physicians who testified for petitioner. All in all, we cannot say that the judge erred in preferring to rely

upon the testimony of the experts. In any event, we are satisfied that respondent suffered no prejudice since it is apparent from the "determination of facts" made by the judge of compensation that he accepted the testimony of respondent's doctor that petitioner's muscles in the cervical and trapezius area were not atrophied but found that the absence of atrophy was due to spasm induced by petitioner's work connected injuries.

Respondent also challenges the asserted refusal of the judge of compensation to permit petitioner to be marked as an exhibit in the case. From the colloquy in the record we are not at all convinced that there was such a refusal. Assuming that there was, we are satisfied for the reasons set forth above that there was no prejudicial error.

Finally, we find no merit to the respondent's contention that the judge of compensation was guilty of an abuse of discretion in his conduct of the trial. Succinctly put, it contends that he asked too many questions and that they were frequently leading and helpful to petitioner's case.

The trial judge possesses a broad discretion as to his participation in the trial. *State v. Riley,* 28 *N. J.* 188, 200–201 (1958), *cert. den.* 359 *U. S.* 313, 79 S. Ct. 891, 3 *L. Ed.* 2d 832 (1959); 361 *U. S.* 879, 80 S. Ct. 166, 4 *L. Ed.* 2d 117 (1959). He may properly intervene in a trial to promote expedition, prevent unnecessary waste of time or clear up obscurity. *State v. Ray,* 43 *N. J.* 19, 25 (1964). However, the power thus vested in him is to be balanced against the necessity of judicial self-restraint and maintenance of an atmosphere of impartiality. *Band's Refuse Removal, Inc. v. Fair Lawn,* 62 *N. J. Super.* 522, 548 (App. Div: 1960), certif. den. 33 *N. J.* 387 (1960). The extent of his participation is one which necessarily rests in discretion and depends upon the circumstances of the particular case. *State v. Riley, supra,* at 201. Here we cannot say that his discretion was mistakenly exercised. The judge was the trier of the facts so that his allegedly excessive intervention could not have affected a jury. The trial lasted eight days; the exhibits were many; much of the testimony was of a

highly technical nature and petitioner, probably because of his neuropsychiatric condition, was a difficult witness.

The judgment of the Middlesex County Court is accordingly affirmed.